**Arturo AGUILAR, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A05–0307–CR–370.

Court of Appeals of Indiana.

July 9, 2004.

Janice L. Stevens, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher C.T. Stephen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Appellant–Defendant Arturo Aguilar appeals his conviction for murder,[1] a felony. We affirm.

### Issue

Aguilar presents one issue for our review, which we restate as whether the trial court abused its discretion in refusing his tendered jury instruction on voluntary manslaughter as a lesser included offense of murder.

### Facts and Procedural History

Aguilar and Sheila Michael dated for several years. They lived together in an apartment in Indianapolis until Michael ended the relationship in January 2001. That month, she moved into a separate apartment in the same complex.

On January 27, 2001, apartment maintenance supervisor Todd Cash went to have coffee with Michael at her apartment. While there, he saw Aguilar and Michael argue. Cash overheard Aguilar tell Michael that he was going to buy a "pistola,"[2] kill her, and go to Mexico. Tr. at 300. Afterwards, Michael told Cash that Aguilar was "loco."[3] Later that day, Michael and Aguilar argued over whether she would give him the keys to her new apartment. When Michael refused, Aguilar became angry, took her keys, and threw them into some bushes.

That evening, Michael went to a local bar with Karen Claybrook, Elizabeth Gross, and Patty Lopez. At the bar, Aguilar approached Michael, and they argued.

---

1. Ind.Code § 35–42–1–1.

2. "Pistola" is Spanish for handgun.

3. "Loco" is Spanish for crazy.

Aguilar grabbed Michael's arm and pulled her hair. As a result, he was escorted out of the bar. A short time later, Aguilar returned. Michael was sitting at a booth with her friends. Aguilar grabbed Michael from behind the booth and hit her. Aguilar was restrained and ejected from the bar. Michael and her friends remained at the bar for about an hour, then went to Claybrook's apartment and continued drinking.

Early in the morning, Michael, Gross, and a Hispanic male decided to return to Michael's apartment. They spent several minutes trying to unlock the front door before they gained access to the apartment. While Gross and the male stayed in the living room, Michael went to the bathroom. Thereafter, Gross heard Michael scream, "Help, Help!" *Id.* at 234. Gross and the Hispanic male ran to the bathroom and tried to open the door. In the reflection of the bathroom mirror, Gross saw Aguilar with a knife in his hand and Michael on the floor. Gross ran to Claybrook's apartment to seek help. When she returned, Gross saw Aguilar running from Michael's apartment. Moments later, Cash saw Aguilar run down the stairs and dispose of a pair of latex gloves.

Michael sustained seven stab wounds to her chest and back and died as a result of the injuries. Indianapolis Police Department officers recovered a kitchen knife from the parking lot outside Michael's apartment complex and latex gloves from a trash bin inside the maintenance office. Later, police lifted a latent fingerprint from inside one of the latex gloves that matched Aguilar's left index finger.

The State charged Aguilar with murder. At trial, Aguilar argued that he had been misidentified by the witnesses. At the close of the evidence, Aguilar tendered an instruction on voluntary manslaughter as a lesser included offense of murder. The trial court refused his instruction on the basis that: (1) no serious evidentiary dispute existed regarding the presence of sudden heat; (2) the defendant had a sufficient cooling off period; and (3) the evidence showed premeditation. *Id.* at 576–78. A jury found Aguilar guilty of murder. Aguilar now appeals the trial court's refusal of this instruction.

### Discussion and Decision

■ It is well settled that the manner of instructing a jury is left to the sound discretion of the trial court; we will reverse only if the court abuses that discretion. *Smith v. State*, 777 N.E.2d 32, 34 (Ind.Ct.App.2002), *trans. denied* (2003). In reviewing a trial court's decision to give or refuse a tendered instruction, we consider whether the instruction correctly states the law; whether there is evidence in the record to support the giving of the instruction; and whether the substance of the tendered instruction is covered by other instructions that are given. *Id.*

■ When the defendant requests a lesser included offense instruction,

> the trial court is required to determine whether the offense is either inherently or factually included in the charged offense and whether there is a serious evidentiary dispute regarding any element that distinguishes the greater offense from the lesser offense.

*Dearman v. State*, 743 N.E.2d 757, 760 (Ind.2001). If a serious evidentiary dispute exists, then the instruction for the lesser included offense should be given. *Culver v. State*, 727 N.E.2d 1062, 1070 (Ind.2000).

■ Voluntary manslaughter is an inherently included offense of murder. It is murder mitigated by evidence of "sudden heat." *See* Ind.Code §§ 35–42–1–1, –3. To establish that he acted in sudden heat, the defendant must show sufficient provocation to engender passion. *Culver*, 727

N.E.2d at 1070. Sufficient provocation is demonstrated by anger, rage, resentment, or terror that obscures the reason of an ordinary person, preventing deliberation and premeditation, excluding malice, and rendering a person incapable of cool reflection. *Dearman,* 743 N.E.2d at 760. "A trial court should grant a requested voluntary manslaughter instruction if the evidence demonstrates a serious evidentiary dispute regarding the mitigating factor of 'sudden heat.'" *Morgan v. State,* 759 N.E.2d 257, 264 (Ind.Ct.App.2001).

■ Aguilar contends that the trial court abused its discretion in refusing to give his tendered instruction on voluntary manslaughter because there was a serious evidentiary dispute as to sudden heat. The trial court determined that there was no serious evidentiary dispute regarding sudden heat, explaining:

> The Court has reviewed case law and in fact asked the defense to articulate the evidence that the defense indicated put this issue in dispute. And at that time, Counsel Mr. Rodriguez indicated a theory that he would seek to argue that the time spent by Sheila Michael and the unnamed, younger, smaller Mexican person trying to get into the apartment is the event that constitutes the provocation that caused the defendant to lose his faculties. And the Court would note that there is evidence that they did spend time trying to get in. There is no evidence as to the volume that those efforts took. There is no evidence that the defendant heard them. More importantly, there is absolutely no evidence in the record that the event provoked any feelings on the part of the defendant. And absent that evidence, the Court finds a lack of a serious evidentiary dispute.

Tr. at 575–76.

Aguilar contends that his arguments and altercations with Michael, several hours before the murder, were sufficient provocation to engender passion. However, the record indicates that Aguilar returned to Michael's apartment after their altercation in the bar, retrieved a knife from her kitchen, donned latex gloves, hid in her bathroom, waited several hours for her return, and stabbed her to death. This evidence does not support an inference that Aguilar acted under sudden heat. *See Horan v. State,* 682 N.E.2d 502, 507 (Ind. 1997) (holding that evidence was insufficient to support determination that defendant acted in sudden heat where sufficient time elapsed affording defendant time for cool reflection); *see also Culver,* 727 N.E.2d at 1071 (noting that establishing that defendant was angry does not, standing alone, show sudden heat; there must be evidence that someone provoked the defendant). Accordingly, the trial court did not abuse its discretion in refusing to give Aguilar's tendered instruction on voluntary manslaughter as a lesser included offense of murder.

Affirmed.

BAKER and BARNES, JJ., concur.