Edward J. DIXEY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A05–1104–CR–172.

Court of Appeals of Indiana.

Nov. 7, 2011.

E. Paige Freitag, Jones, McGlasson & Benckart, PC, Bloomington, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

In this case, appellant-defendant Edward Dixey was convicted of Theft,[1] a class D felony, after an investigation revealed that utility-equipment had been tampered with, allowing electricity to be diverted and, thereby, permitting Dixey to use electricity without paying for it. Dixey appeals his conviction and requests that he be granted a new trial.

On appeal, Dixey argues that the trial court erred when it refused to give three of his tendered jury instructions, two of which included lesser offenses and the remaining involved statutory interpretation that when general and specific statutes apply to a particular subject matter, the specific statute prevails over the general statute. Additionally, Dixey contends that the trial court erred when it prohibited him from asserting in his closing argument that the State had failed to prove that Dixey had committed theft, but may have proven that he had committed a lesser offense instead. Essentially, Dixey's defense was that the lesser offenses were more applicable to the proscribed conduct of which he was accused of engaging.

Although the State has the discretion to charge criminal defendants under the statute it chooses, criminal defendants are nonetheless entitled to present their theory of the case or, in other words, their defense. In this case, the trial court did not err by refusing to give Dixey's proposed instructions, inasmuch as they were neither factually-included lesser offenses nor correct statements of the law. Nevertheless, by preventing Dixey from discussing the lesser offenses during closing argument, he was foreclosed from presenting his defense. Consequently, we reverse and remand for a new trial.

## FACTS

In August 2010, Dixey was renting a house in Evansville. Dixey had moved into the house in September 2009, and in May 2010, after his two roommates had moved out, Dixey had the utilities transferred to his name. At that time, Dixey was sharing the house with Steven Keller, who had also signed the lease.

Dixey agreed to pay the rent, while Keller agreed to pay the cable and the electricity, which included gas. The water was paid by the landlord. Although Dixey had placed the utilities in his name, he did not

1. Ind.Code § 35–43–4–2.

follow up with Vectren, the electric company, or any other utility company, to ensure that the bills were being paid by Keller.

In August 2010, Dixey's ex-wife, Carolyn, along with their two daughters and Carolyn's son from a subsequent marriage moved in with Dixey. Around the same time, Dixey's son, James, moved into the residence as well.

On Monday, August 16, 2010, Dixey arrived home to find that Vectren had disconnected his electricity for failure to pay an outstanding balance. Dixey testified that up until that day, he believed that "Steve was paying [the utilities] per our agreement." Tr. p. 224.

After his electricity was disconnected, Dixey spoke with his neighbor, Billy Baumann, who loaned him two extension cords. Accordingly, Dixey began using Baumann's electricity to operate his refrigerator, television, and fans.

Dixey told Keller that he needed to have the electricity turned on by Wednesday, August 18. Keller hired his friend, Malcolm, to fix the electrical service box located on the outside of the house that had been damaged by high winds before the electricity had been disconnected. Dixey was not at home when Malcolm performed the work, but the electricity was on when he arrived home that day. Dixey testified that James told him that he had the Vectren bill placed in James's name to "stop the friction going on" between Keller and Dixey. Tr. p. 229. Dixey did not call Vectren to confirm what James had told him.

On August 31, 2010, Jola Vanover, a primary meter specialist for Vectren, visited Dixey's residence to investigate a report of a possible electrical service diversion. Vanover noticed that the air conditioner was operating even though, according to Vectren's records, the power-

er had been disconnected. Vanover inspected the meter, which indicated that no electricity was registering through it. Vanover also inspected the weather head, which is the location where the Vectren wires connect with the customer's wires and noticed that someone had tampered with them, thereby diverting electricity.

Melissa Harter, a protection specialist with Vectren, received a call on August 31, 2010, regarding the investigation. Because of the "potentially unsafe condition," she told Vanover that Vectren would contact the police and file a police report and instructed Vanover to "initiate a disconnect" at the utility pole to stop any further diversion. Tr. p. 115. That same day, Vanover instructed another Vectren employee to disconnect service to the house.

Harter contacted Detective Gregory Fleck of the Evansville Police Department later that day. The next day, September 1, 2010, Detective Fleck visited the residence and spoke with Dixey. After a conversation that lasted a few minutes, Dixey agreed to provide a taped statement.

Earlier that day, Dixey had paid an electrician, R. Breivogel Electric, Inc., $266 to replace the existing wiring and breaker box and ground the wiring. Mr. Breivogel completed an Emergency Service Activator form issued by the Evansville–Vanderburgh County Building Commission and provided that to Dixey. Dixey showed his receipt to Detective Fleck on September 1, 2010.

On September 20, 2010, the State charged Dixey with class D felony theft. Dixey's two-day jury trial commenced on February 15, 2011. At the conclusion of the State's case-in-chief, Dixey moved for a directed verdict, arguing that he should have been charged with utility fraud under Indiana Code section 35–43–5–6. Dixey reasoned that when faced with a general statute and a specific statute on the same

subject, the more specific statute applies and that the utility fraud statute was more on point. The trial court denied the motion.

After all the evidence was presented, Dixey submitted four proposed jury instructions. Three of these instructions set forth the elements of what Dixey alleged were lesser-included offenses, including class A misdemeanor criminal conversion, class A misdemeanor criminal deception, and class B infraction utility fraud. The fourth instruction stated that "[i]t is a general rule of statutory construction that when general and specific statutes conflict in their application to a particular subject matter, the specific statute will prevail over the general statute." Appellant's App. p. 17. The trial court instructed the jury on criminal conversion as an inherently lesser-included offense of theft but refused Dixey's remaining tendered instructions.

During closing argument, the State objected when Dixey's counsel began discussing other offenses not charged, namely, criminal deception and utility fraud. During a sidebar conference, the trial court sustained the State's objection and ordered defense counsel to not mention the other offenses because the trial court had rejected Dixey's proposed jury instructions on those offenses. Dixey's counsel then made an offer of proof outside the jury's presence, arguing that under Indiana law, the jury has the right to determine the law and the facts. Counsel further argued that the jury had the prerogative to find Dixey not guilty of theft if it determined that the State had failed to prove the requisite knowledge and intent for felony theft and that one of the other crimes more closely fit the facts.

The jury found Dixey guilty as charged. On March 17, 2011, the trial court sentenced Dixey to one year to be served consecutively to a term of years imposed for a probation revocation under Cause Number 82D02–0909–MC–967, resulting from his theft conviction. Dixey now appeals.

## DISCUSSION AND DECISION

### I. Lesser–Included Offenses

#### A. Standard of Review

■■■ Dixey maintains that the trial court erred when it refused to instruct the jury on two lesser offenses, namely, utility fraud and criminal deception, which Dixey maintained were factually included. It is well established that the manner of instructing the jury is left to the sound discretion of the trial court. *Aguilar v. State*, 811 N.E.2d 476, 478 (Ind.Ct.App. 2004). A trial court's decision to refuse a tendered instruction will be reversed only for an abuse of that discretion. *Id.*

■■■ To determine if the alleged lesser offense is factually included, the court must compare the statute defining the alleged lesser-included offense with the charging information. *Wright v. State*, 658 N.E.2d 563, 567 (Ind.1995). If the charging information alleges that the means used to commit the crime charged included all of the elements of the alleged lesser-included offense, then it is factually included in the crime charged. *Id.* While the State cannot draft a charging information that forecloses an instruction on an inherently lesser-included offense, it may draft a charging information that forecloses a factually included offense of the crime charged. *Id.* at 569.

#### B. Utility Fraud

■■ Dixey contends that utility fraud is a factually included lesser offense of theft.

Indiana Code section 35–43–5–6 states that:

(a) A customer who utilizes any device or scheme to avoid being assessed for the full amount of services received from a utility or a cable TV service provider commits a Class B infraction.

(b) Evidence that a customer's metering device has been altered, removed, or bypassed without the knowledge of or notification to the utility is prima facie evidence that the customer has utilized a device or scheme to avoid being assessed for the full amount of services received from the utility.

(c) Evidence that access to services of a utility or a cable TV service provider has been obtained without authority from the utility or the cable TV service provider constitutes prima facie evidence that the person benefiting from the access has utilized a device or scheme to avoid being assessed for the full amount of services received from the utility or the cable TV service provider.

The charging information, in relevant part, alleged that:

> Edward J. Dixey did knowingly exert unauthorized control over the property of Vectren, to-wit: electricity and/or electrical services, with the intent to deprive the said Vectren of the value and use thereof, by taking and possessing said item(s) without the knowledge or consent of the said Vectren, contrary to the form of the statutes in such cases made and provided by I.C. 35–43–4–2(a) and against the peace and dignity of the State of Indiana.

Appellant's App. p. 67.

Here, the charging information did not allege the means by which Dixey used to exert unauthorized control over Vectren's property. More particularly, the charging information does not allege that Dixey exerted unauthorized control by utilizing any device or scheme as required for utility fraud. Consequently, utility fraud is not a factually included lesser offense of theft, and the trial court did not err by refusing to give Dixey's proffered instruction on utility fraud.

### C. Criminal Deception

■ Similarly, Dixey contends that the trial court erred when it refused to instruct the jury on criminal deception. Indiana Code section 35–43–5–3(a)(5) provides, in relevant part, that "[a] person who ... with intent to defraud another person furnishing electricity ... avoids a lawful charge for that service by scheme or device or by tampering with facilities or equipment of the person furnishing the service ... commits deception, a Class A misdemeanor." And, as stated above, the charging information stated:

> Edward J. Dixey did knowingly exert unauthorized control over the property of Vectren, to-wit: electricity and/or electrical services, with the intent to deprive the said Vectren of the value and use thereof, by taking and possessing said item(s) without the knowledge or consent of the said Vectren, contrary to the form of the statutes in such cases made and provided by I.C. 35–43–4–2(a) and against the peace and dignity of the State of Indiana.

Appellant's App. p. 67.

Like our analysis above, the charging information does not allege the means by which Dixey exerted unauthorized control over Vectren's electricity and/or electrical services. Specifically, the charging information does not allege that Dixey exerted unauthorized control by scheme or device or by tampering with Vectren's facilities or equipment. Accordingly, the trial court did not err by refusing to give this instruction.

## II. Jury Instruction

Dixey argues that the trial court erred when it refused to give his proposed instruction on statutory construction. Specifically, the instruction stated:

It is a general rule of statutory construction that when general and specific statutes conflict in their application to a particular subject matter, the specific statute will prevail over the general statute.

Appellant's App. p. 17.

When determining whether the trial court erred in refusing the defendant's tendered instruction, this Court will look to whether: (1) the tendered instruction correctly states the law; (2) there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions. *Sylvester v. State,* 698 N.E.2d 1126, 1131 (Ind.1998).

In *Skinner v. State,* the defendants were charged with class C felony defrauding a financial institution. 732 N.E.2d 235, 236 (Ind.Ct.App.2000), *summarily affirmed by* 736 N.E.2d 1222 (Ind.2000). The defendants moved to dismiss for failure to properly charge, which was denied by the trial court. *Id.*

On interlocutory appeal, the defendants argued that the State should be required to charge them with class D felony check fraud instead of defrauding a financial institution. *Id.* at 236–37. More particularly, the defendants claimed that both statutes addressed the same subject matter and defined the same conduct as a different class of crime and argued that the more specific check fraud statute should prevail over the more general defrauding a financial institution statute. *Id.* at 237.

A panel of this Court disagreed with the defendants' arguments and determined that the State is not required to prosecute under the more specific of two statutes or under the statute carrying the lesser penalty. *Id.* at 238. The *Skinner* Court reasoned that if the General Assembly did not want to include acts which constituted check fraud within the statute outlining the conduct that constitutes defrauding a financial institution, it could have specifically excluded those acts constituting check fraud. *Id.*

In light of *Skinner,* we cannot agree that Dixey's tendered instruction was a correct statement of the law. Accordingly, the trial court did not err by refusing to give that instruction.

## III. Closing Argument

In a related argument, Dixey argues that the trial court erred when it refused to allow him to assert during closing arguments that "the jury might find Dixey not guilty of felony theft after determining that [utility fraud or criminal deception] were more relevant to the evidence presented." Appellant's Br. p. 14. Dixey also contends that he should have been permitted to explain to the jury the rule of law that when faced with a general and a specific statute on the same subject, the more specific statute applies.

The proper scope of closing argument is within the trial court's sound discretion. *Taylor v. State,* 457 N.E.2d 594, 599 (Ind.Ct.App.1983). We will not find that the trial court abused its discretion unless its decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* In seeking reversal of a conviction, the appellant must not only show that the trial court erred but also that he was prejudiced by the error. *Id.*

In *Taylor,* the trial court prohibited Taylor's counsel from highlighting the degrees of culpability, namely, recklessness and negligence. *Id.* The trial court had

concluded that such comparison was irrelevant, insofar as Taylor had been charged with reckless driving. *Id.*

A panel of this Court disagreed, noting that it was for the jury to decide whether the State had met its burden of establishing Taylor's recklessness. *Id.* "In defining the legal meaning of the word, a jury may be provided with examples of what conduct falls short of 'recklessness' provided such argument is not unduly confusing to the jury." *Id.* The *Taylor* Court concluded that understanding the distinction between negligence and recklessness would have aided the jury in its deliberations. *Id.* Additionally, the Court remanded for a new trial after determining that Taylor had been prejudiced, inasmuch as he had been prevented from arguing the applicable law that supported his theory of the case that he had been merely negligent rather than reckless. *Id.* at 600.

Turning to the instant case, the State was required to prove beyond a reasonable doubt that Dixey "did knowingly exert unauthorized control over the property of Vectren...." Appellant's App. p. 67. As in *Taylor,* the jury would have been aided had Dixey been able to explain that the legislature had enacted other offenses directly related to the use of utility bypass schemes or devices that do not require proof of the same requisite mens rea as theft. Moreover, as in *Taylor,* without the ability to discuss these other statutes, Dixey was prejudiced, insofar as he was deprived of presenting the theory of his defense. Consequently, he is entitled to a new trial.

Notwithstanding the conclusion above, counsel does not have the right to misstate the law or argue a theory unsupported by the evidence during closing arguments. *Id.* at 599. That said and in light of our above discussion of *Skinner,* we cannot say that the trial court erred by refusing to allow Dixey to argue that under Indiana law, a specific statute prevails over a more general one, although he was free to argue that the evidence presented was more consistent with one of the lesser offenses, inasmuch as that was his defense. Accordingly, we reverse and remand for a new trial.

The judgment of the trial court is reversed and the case is remanded for a new trial.

KIRSCH, J., and BROWN, J., concur.