

IN THE

# Court of Appeals of Indiana

Jerry D. McBride,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

May 12 2025, 8:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

May 12, 2025

Court of Appeals Case No.
24A-CR-2213

Appeal from the Elkhart Superior Court

The Honorable Elizabeth A. Bellin, Judge

Trial Court Cause No.
20D04-2305-CM-917

**Opinion by Judge Foley**
Judges Bailey and Bradford concur.

**Foley, Judge.**

[1] Following a jury trial, Jerry D. McBride ("McBride") was convicted of Class A misdemeanor invasion of privacy for violating a protective order prohibiting him from communicating with a next-door neighbor.[1] McBride now appeals. We address the following restated issues:

I. Whether, by failing to make an offer of proof, McBride failed to preserve his challenge to the trial court's ruling on a motion in limine, where the preliminary ruling excluded evidence about the underlying dispute that led to the issuance of the protective order; and

II. Whether the trial court erred in declining to instruct the jury on the defense of property, which is a legal justification for an otherwise criminal act.

[2] Concluding that McBride failed to preserve the claim of evidentiary error, but that the trial court committed reversible error in declining to give a pattern jury instruction on the defense of property, we reverse and remand for a new trial.[2]

## Facts and Procedural History

[3] On May 22, 2023, the State charged McBride with Class A misdemeanor invasion of privacy, alleging McBride knowingly violated a protective order

---

[1] Ind. Code § 35-46-1-15.1(a)(1).

[2] In light of our disposition, to the extent McBride presents additional issues, we do not address them.

issued under Indiana Code chapter 34-26-5 to protect Stephen Skelton ("Skelton"). McBride and Skelton live next door to one another, with a fence that divides their properties. McBride has claimed ownership of the fence.

[4] McBride requested a jury trial. Ahead of trial, the State filed a motion in limine to exclude "[a]ny evidence regarding the property dispute relating to [McBride] and [Skelton]," i.e., "the protected party of the protect[ive] order." Appellant's App. Vol. 2 p. 63. The State asserted this evidence would confuse the jury, was irrelevant to the charged offense, and might open the door to character evidence under Evidence Rule 404(b). The trial court took the motion under advisement.

[5] A jury trial began on August 1, 2024. During voir dire, defense counsel referred to a property dispute between McBride and Skelton, at which point the State objected. At that point, the trial court preliminarily granted the State's motion in limine, noting it would revisit the issue based on the evidence presented at trial. During the ensuing jury trial, the State presented evidence indicating that McBride was subject to a protective order prohibiting him from "harassing, annoying, telephoning, contacting, or directly or indirectly communicating with" Skelton. Tr. Vol. II pp. 73–74; Ex. Vol. II p. 5. The protective order was issued on July 1, 2021, and effective until July 1, 2023. The State presented evidence that, on April 26, 2023—about two months before the protective order expired—Skelton was in his backyard working on his chicken coop. As Skelton rehung netting for the chicken coop, McBride repeatedly yelled "hey" to get Skelton's attention. Tr. Vol. II pp. 60–61. Skelton initially ignored McBride, who was yelling from his back deck about sixty yards away from Skelton.

McBride escalated to using vulgarities, telling Skelton he was going to "cut down all those f*cking trees" and "tear out all that f*cking chicken net." *Id.* at 61. McBride then told Skelton he could "suck [his] d*ck, motherf*cker" while "throw[ing] his head forward, grab[bing] his crotch, and . . . shaking [part of his body] at [Skelton]." *Id.* Skelton told McBride he should not be talking to him. McBride replied: "I don't care." *Id.* Skelton contacted law enforcement, who confirmed there was a valid protective order prohibiting McBride from communicating with Skelton. McBride later spoke with law enforcement about the incident and acknowledged that he spoke with Skelton. At the end of a phone conversation, McBride told law enforcement: "[W]hen that protect[ive] order is over, [Skelton] is open game[.]" *Id.* at 102.

[6] After the State rested, McBride asked the trial court to revisit its ruling on the State's motion in limine, asserting that there had been testimony indicating "there was a property dispute at the crux of the issue" and "there was no objection made." *Id.* at 84. The State argued the testimony was given "after a question that [the] defense made, not . . . [the State]" and that "the question of why . . . the protect[ive] order [was] issued ha[d] some relevancy to it," but there was no indication that additional evidence about a property dispute "would be relevant in th[e] proceeding." *Id.* The trial court declined to revisit its ruling, but noted that if McBride felt the court "need[ed] to readdress th[e] matter," the court "most certainly w[ould] entertain that" and "give [McBride] an opportunity to either make an offer to prove or to argue that [the] evidence regarding the property dispute and specific acts . . . would be relevant . . . to

prove or disprove or support [his] defense[.]" *Id.* The court added: "As the evidence continues to go through, . . . just approach and we can address [the issue] at that time." *Id.* at 85. McBride then presented his witnesses, ultimately making no offer of proof.

[7] In presenting his defense, McBride testified and called his wife as a witness. Their version of events was that Skelton was "attaching his chicken stuff to [their] fence." *Id.* at 87. They said McBride politely asked Skelton to not attach things to their fence, at which point Skelton responded with vulgar language and informed McBride that he was not "supposed to f*cking talk to [him]." *Id.* at 91. McBride testified that he calmly spoke with Skelton only to prevent damage to his fence and that he immediately went inside at his wife's behest.

[8] McBride asked the trial court to instruct the jury on the right to defend his personal property, specifically referring to (1) the defense of necessity, (2) the defense of property, and (3) the defense of dwelling. *See id.* at 105. McBride argued the defenses applied because there was evidence of a "property line dispute" and "any encroachment"—e.g., "attaching something to the fence"— "would be a trespass or an unlawful entry[.]" *Id.* at 109. The trial court regarded McBride's request as a request for pattern jury instructions.[3] *See* Appellant's App. Vol. 2 p. 105. The State argued McBride was not entitled to jury instructions on the defense of property or the defense of dwelling—which

[3] The three defenses are addressed in separate pattern jury instructions. *See* Ind. Pattern Criminal Jury Instructions 10.0400 (defense of dwelling), 10.0500 (defense of property), 10.2100 (defense of necessity).

are codified in the Indiana self-defense statute—because those defenses only apply to the use of force. According to the State, the record did not support giving the requested instructions because the evidence reflected that McBride engaged in verbal communications alone. The trial court agreed to instruct the jury on the necessity defense. However, it found the other defenses inapplicable under the circumstances. In rejecting the defense of property and the defense of dwelling instructions, the trial court began by noting: "Indiana court[s] have made pretty clear that a claim of defense of property is analogous to a self-defense claim[,] and so the standards for self-defense would apply in this instance." Tr. Vol. II p. 109. The trial court added: "As we all know, a valid claim of self-defense is a legal justification for an otherwise criminal act." *Id.* The trial court determined the defenses applied only if the defendant used physical force, remarking: "Quite frankly, I haven't heard any evidence regarding violence or force." *Id.* at 110; *see also id.* at 111 ("[T]here are no facts . . . to show that force was used[.]").

[9] The jury found McBride guilty of Class A misdemeanor invasion of privacy. The trial court later sentenced McBride to 365 days in the Elkhart County Jail, with the sentence fully suspended to probation. McBride now appeals.

## Discussion and Decision

### I. Exclusion of Evidence

[10] McBride claims the trial court erred in excluding evidence about the scope of his existing property dispute with Skelton, alleging the improper exclusion of

evidence interfered with the right to present a complete defense. McBride points out that the Sixth and Fourteenth Amendments to the United States Constitution guaranteed him a meaningful opportunity to present a complete defense. *See* Appellant's Br. p. 10–11 (citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). McBride directs us to *Dixey v. State*, where we reversed a conviction and remanded for a new trial because the defendant was "prejudiced, insofar as he was deprived of presenting the theory of his defense." 956 N.E.2d 776, 783 (Ind. Ct. App. 2011), *trans. denied*. McBride claims he was prejudiced by the ruling on the State's motion in limine, asserting that, due to the ruling, he was prevented from presenting evidence about an ongoing property dispute with Skelton—a dispute he claims was germane to theories of his defense. *See, e.g.*, Appellant's Br. p. 11 ("The 'why' of [McBride's] conduct [was] crucial to understanding his culpability for the charged offense.").

[11]  A motion in limine is a preliminary ruling that, in itself, does not result in reversible error. *E.g.*, *Hollowell v. State*, 753 N.E.2d 612, 615 (Ind. 2001). Thus, "[i]n order to preserve an error for appellate review, a party must do more than challenge the ruling on a motion in limine." *Id.* Indeed, litigants generally must comply with Indiana Evidence Rule 103, which governs the preservation of evidentiary error. *Cf. generally id.*; Ind. Evid. R. 103(a). This evidence rule provides that a party may claim error in a ruling to exclude evidence only if (1) the party "inform[ed] the court of its substance by an offer of proof, unless the substance was apparent from the context"; and (2) the error "affect[ed] a substantial right of the party[.]" Evid. R. 103(a). "An offer of proof allows the

trial and appellate courts to determine the admissibility of the [evidence], as well as the potential for prejudice if it is excluded." *Heckard v. State*, 118 N.E.3d 823, 828 (Ind. Ct. App. 2019), *trans. denied*. Thus, as our Supreme Court has explained: "Absent either a ruling admitting evidence accompanied by a timely objection or a ruling excluding evidence accompanied by a proper offer of proof, there is no basis for a claim of error." *Hollowell*, 753 N.E.2d at 615–16.

[12] In this case, McBride failed to make an offer of proof regarding the potential defense evidence he claims was improperly excluded under the trial court's ruling on the motion in limine. Moreover, we cannot say the substance of the evidence was apparent from context. At trial, there was at least some evidence about a property dispute between McBride and Skelton. For example, the protective order referred to "damages to shrubs" and noted that "shrubs/trees [were] beyond repair[.]" Ex. Vol. II p. 6. Further, when McBride testified, he explained that he was upset with Skelton "[b]ecause he was attaching . . . stuff to [McBride's] fence," adding: "It was bad enough that his arborvitaes were encroaching on my property[—]that I can't touch until after this protective order is over[.] . . . So, now, I gotta [sic] wait to fight to get this stuff off of my fence. I was trying to protect my property, sir[.]" Tr. Vol. II p. 103. Moreover, in seeking jury instructions on the defense of property, McBride specifically referred to evidence of a property dispute, stating: "We have heard several people state that this was a property line dispute[.]" *Id.* at 109. Based on the record, and absent an offer of proof informing the trial court of the substance of the excluded evidence, we cannot say it was apparent from context what

evidence McBride was precluded from presenting as a result of the ruling on the motion in limine.

[13] In sum, McBride failed to preserve error in the exclusion of the evidence due to the motion in limine. We therefore do not further address this claim of error.

## II. Jury Instructions

[14] McBride argues the trial court erred in refusing to instruct the jury on the right to defend property. "The manner of instructing a jury lies largely within the discretion of the trial court and we will reverse only for an abuse of discretion." *Carter v. State*, 31 N.E.3d 17, 25 (Ind. Ct. App. 2015), *trans. denied.* The trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances. *Fansler v. State*, 100 N.E.3d 250, 253 (Ind. 2018). In reviewing whether the trial court should have given a proposed jury instruction, we look to whether (1) the instruction correctly stated the law, (2) there was evidence to support giving the instruction, and (3) the substance of the instruction was covered by other instructions. *See, e.g.*, *McCowan v. State*, 27 N.E.3d 760, 763–64 (Ind. 2015). If the trial court improperly declined to instruct the jury on an applicable defense, the error is not harmless. *Hernandez v. State*, 45 N.E.3d 373, 378 (Ind. 2015). Indeed, our Supreme Court has likened this scenario to "the giving of an erroneous instruction," noting that "[b]oth circumstances present the same risk that the failure to properly instruct the jury impacted the jury's ultimate decision." *Id.* (reversing where the trial court improperly declined to instruct the jury on the defense of necessity).

[15] At trial, "the party seeking an instruction need only produce some evidence—a 'scintilla'—of each element of the underlying claim or defense." *Humphrey v. Tuck*, 151 N.E.3d 1203, 1207 (Ind. 2015). In other words, the trial court "may refuse a jury instruction only when '[n]one of the facts' in the record would support the legal theory offered in the instruction." *Id.* (alteration in original) (quoting *Sims v. Huntington*, 393 N.E.2d 135, 139 (Ind. 1979)). Thus, when at least some evidence supports the requested jury instruction—"even if the evidence is weak and inconsistent"—the trial court must give the instruction. *Hernandez*, 45 N.E.3d at 376 (quoting *Howard v. State*, 755 N.E.2d 242, 247 (Ind. Ct. App. 2001)); *see also Humphrey*, 151 N.E.3d at 1207 ("A jury should hear a tendered instruction if the record, though 'meager[,]' . . . contains 'any facts or circumstances' pertinent to the case." (quoting *Reed v. State*, 40 N.E 525, 527 (1895)). To the extent a claim of error in instructing the jury turns on a question of law, such as the meaning of a statute, our review is de novo. *See Zitzka v. Brogdon*, 222 N.E.3d 1025, 1028 (Ind. Ct. App. 2023), *trans. denied*.

[16] At trial, McBride sought pattern jury instructions on the defense of property. The defense of property is rooted in Indiana Code section 35-41-3-2, where subsection (d) codifies the right to defend one's "dwelling, curtilage, or occupied motor vehicle" and subsection (e) codifies the right to defend "property other than a dwelling, curtilage, or an occupied motor vehicle[.]" Under both statutory subsections, the defense applies only if the force was reasonable. *See* Ind. Code § 35-41-3-2(d), (e). Specifically, subsection (d) provides that "[a] person is justified in using reasonable force, including deadly

force, against any other person" and "does not have a duty to retreat" if the person "reasonably believes that the force is necessary to prevent or terminate the other person's unlawful entry of or attack on the person's dwelling, curtilage, or occupied motor vehicle." I.C. § 35-41-3-2(d). Subsection (e) applies to "other" types of property, specifying that "a person is justified in using reasonable force against any other person" if the person "reasonably believes that the force is necessary to immediately prevent or terminate the other person's trespass on or criminal interference with property lawfully in the person's possession[.]" I.C. § 35-41-3-2(e). The Indiana Pattern Criminal Jury Instructions accurately reflect these statutory rights, with Instruction 10.0400 corresponding to subsection (d) and Instruction 10.0500 to subsection (e).

[17] Before addressing the merits, we turn to the State's contention that McBride "waived any review of the trial court's refusal to give his proposed instruction" by allegedly failing to comply with portions of the Indiana Rules of Appellate Procedure. Appellees' Br. p. 15. The State directs us to Appellate Rule 46(A)(8)(e), which provides as follows: "When error is predicated on the giving or refusing of any instruction, the instruction shall be set out verbatim in the argument section of the brief with the verbatim objections, if any, made thereto." The State also directs us to Appellate Rule 50(A)(2)(e), which specifies that whenever a claim of error "is predicated on the . . . refusing of [a jury] instruction," the appellant's appendix must include "any instruction not included in [their] brief under Rule 46(A)(8)(e)[.]" Regarding waiver, we must be mindful of our Supreme Court's preference to resolve cases on the merits

instead of on procedural grounds like waiver. *See Cardosi v. State*, 128 N.E.3d 1277, 1284 n.3 (Ind. 2019) (reaching the merits, despite noncompliance with the Appellate Rules, where the procedural issue did not impede review). In any case, here, McBride disputes waiver, pointing out that his brief included one pattern instruction, Indiana Pattern Criminal Jury Instruction 10.0500, which was the catchall instruction under subsection (e) of the statute. *See* Appellant's Br. pp. 7–8. We also note that the appendix contained the final instructions. *See* Appellant's App. Vol. 2 pp. 84–102. Under the circumstances, we disagree with the State's contention that McBride waived the jury instruction claim.[4]

[18] Turning to the merits, the State argues there was no evidence to support a defense of property instruction because "the evidence did not demonstrate a use of force[.]" Appellee's Br. p. 16. We take the State's position to be that, had McBride punched Skelton and been charged with both battery and invasion of privacy, the defense of property would have been available, but the defense was not available here because McBride only yelled at Skelton and was therefore only charged with invasion of privacy. We note, however, that in codifying rights of self-defense, the defense of property, and the defense of others, Indiana

---

[4] In briefing, McBride does not consistently distinguish between (1) defense of property under subsection (d) with its corresponding pattern jury instruction and (2) defense of property under subsection (e) with its corresponding pattern jury instruction. *See* Appellant's Br. pp. 7–8 (providing the pattern jury instruction corresponding to subsection (e)), 11 (referring generally to a jury instruction "concerning Use of Force to Protect Property"), 12 (quoting subsection (d)). In any case, although the State claims waiver based on the contents of McBride's appellate filings, the State ultimately does not distinguish between the defenses, instead at one point broadly focusing on whether the trial court "properly declined [the] proposed jury instructions on defense of property." Appellee's Br. p. 2. We therefore do not further address the statutory distinction.

Code section 35-41-3-2 provides a legal justification for conduct that would otherwise be a criminal act. *Cf. Geljack v. State*, 671 N.E.2d 163, 165 (Ind. Ct. App. 1996) (discussing the respective burdens of the parties as to "affirmative defenses that justify or excuse conduct which would otherwise be criminal"). Indeed, as commentators have explained, "a justification defense is one that defines conduct 'otherwise criminal, which under the circumstances is socially acceptable and which deserves neither criminal liability nor even censure.'" 2 Wayne R. LaFave, *Subst. Crim. L.* § 9.1(a)(3) (3d ed.), Westlaw (database updated Oct. 2024) (quoting Peter D. W. Heberling, Note, *Justification: The Impact of the Model Penal Code on Statutory Reform*, 75 Colum. L. Rev. 914, 916 (1975)). The essence of this type of defense is a triggering condition, i.e., "the circumstances that must exist before the defendant can be deemed to have been eligible to act under a particular justification[.]" *Id.* "Triggering conditions . . . typically consist of an event putting at risk some legally-protected interest." *Id.*

[19] Under the Indiana self-defense statute, a person is generally "justified in using reasonable force" if the person reasonably believes it is necessary to use that force to terminate another person's trespass. I.C. § 35-41-3-2(d), (e). And it is not as though our legislature limited the meaning of "force" to refer only to physical force. Our task is to give statutory language its "plain, ordinary, and usual meaning, consulting English language dictionaries when helpful in determining that meaning." *Moriarity v. Ind. Dep't of Nat. Res.*, 113 N.E.3d 614, 621 (Ind. 2019). The Merriam-Webster dictionary provides several definitions for force, among them: (1) "strength or energy exerted or brought to bear[,]"

cause of motion or change[,] active power"; (2) "moral or mental strength"; and (3) "capacity to persuade or convince[.]" *Force*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/force [https://perma.cc/3DCH-BVBA]. Similarly, in defining "force," Webster's New International Dictionary specifically refers to both "physical strength or vigor" and "moral or mental strength[.]" Webster's New Int'l Dictionary 887 (3rd ed. 1976). Thus, based on the foregoing, we disagree with the State that the justification defense at issue, which provides a legal justification for an otherwise-criminal act, applies only if the defendant applied physical force.

[20] Next, the State challenges whether McBride could reasonably believe the use of force was necessary. The State argues that "McBride failed to establish a reasonable fear that Skelton would damage McBride's property," claiming that, "[a]t most, McBride demonstrated that Skelton attached PVC pipe to a fence that stood on the property line separating the two properties[.]" Appellee's Br. p. 17.[5] We note, however, that the defendant is entitled to a defense instruction even if there is only a "scintilla" of evidence supporting each element of the defense. *See Humphrey*, 151 N.E.3d at 1207. The evidentiary threshold is low because "it should be left to the province of the jury to determine whether that evidence is believable or unbelievable." *Hernandez*, 45 N.E.3d at 378. Here, we conclude McBride cleared the low bar to support giving the jury instruction.

---

[5] The State focuses on fear of property damage, but the statute instead focuses on the reasonableness of believing force was necessary to prevent or terminate an unlawful trespass. *See* I.C. § 35-41-3-2(d), (e).

We conclude that the trial court erred in declining to instruct the jury on the defense of property. Because the State otherwise presented sufficient evidence that McBride committed invasion of privacy, the proper remedy is to reverse and remand for a new trial. *See Patton v. State*, 760 N.E.2d 672, 675 n.5 (Ind. Ct. App. 2002) (remanding for a new trial due to the failure to give a requested jury instruction, noting that principles of double jeopardy do not preclude retrial so long as the State presented sufficient evidence to support the conviction).

Reversed and remanded.

Bailey, J. and Bradford, J., concur.

ATTORNEY FOR APPELLANT

Donald R. Shuler
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana