# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**STANLEY F. WRUBLE, III**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

**FILED**
Dec 05 2012, 9:22 am

CLERK
of the supreme court,
court of appeals and
tax court

## IN THE
## COURT OF APPEALS OF INDIANA

|                              |   |                          |
|------------------------------|---|--------------------------|
| MITCHELL BURTON,             | ) |                          |
|                              | ) |                          |
|    Appellant-Defendant, | ) |                          |
|                              | ) |                          |
|      vs. | ) | No. 71A03-1203-CR-129 |
|                              | ) |                          |
| STATE OF INDIANA,            | ) |                          |
|                              | ) |                          |
|    Appellee-Plaintiff. | ) |                          |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable John M. Marnocha, Judge
Cause No. 71D02-1012-FD-1237

**December 5, 2012**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

Mitchell Burton ("Burton") appeals his conviction of resisting law enforcement, a class D felony.[1]

We reverse and remand.

## ISSUE

The following issue is dispositive: whether the trial court abused its discretion in refusing to give Burton's tendered self-defense and resistance of unlawful force instructions.

## FACTS

At approximately 4:30 a.m. on December 25, 2010, Norman Northcutt ("Northcutt") noticed a silver car parked across the street from his South Bend home. The car was parked in the opposite direction of what it should have been facing.

Approximately thirty minutes later, Northcutt heard a loud "bang," and he looked out the window to see what had caused the noise. (Tr. 161). He saw that the silver car had bumped into the front of the pickup truck that it was facing. Northcutt was concerned that the person inside the car needed help, and he called 911 to report what had happened.

---

[1] Burton was convicted of resisting law enforcement under Indiana Code § 35-44-3-3(b)(1)(B). Public Law 126-2012, § 54 recodified the statute as Indiana Code § 35-44.1-3-1, effective July 1, 2012.

South Bend Police Officer Erik Schlegelmilch ("Officer Schlegelmilch") responded to a dispatch describing an accident involving a "vehicle . . . up against another parked vehicle." (Tr. at 108). Officer Schlegelmilch was the first officer to arrive in Northcutt's neighborhood, and South Bend Police Officers Andrew Witt ("Officer Witt") and Jonathon Gray ("Officer Gray") arrived shortly thereafter. All three officers were in uniform and all arrived in fully-marked patrol cars.

Officer Schlegelmilch parked his patrol car behind the silver car. The patrol car's red and blue emergency lights were activated, and the car's dash camera automatically began recording.

The DVD of the events recorded by the camera shows that exhaust was coming from the silver car. Officer Schlegelmilch's car was parked in the street a short distance behind and to the right of the car. As Officer Schlegelmilch approached the car, Officer Witt walked behind him, and a police car, driven by Officer Gray, arrived at the scene.

Officer Schlegelmilch walked past the passenger side to the front of the car and shined his flashlight into the car. He informed Officer Witt that there was a person inside. This person was later identified as Burton. Burton apparently pushed the accelerator, and Officer Schlegelmilch told Officer Witt to "Wake his ass up; he's hitting the accelerator." (DVD at 1:00). Officer Witt, who was positioned at the driver's side of the car, tried to open the car door and began tapping on the window with his flashlight.

3

While Officer Witt tapped on the driver's side window, Officer Gray approached and began tapping on the passenger side window.

Burton apparently awakened, and Officer Gray reacted by pointing his service revolver at the car and twice ordering Burton to "shut the car off and open the door." (DVD at 1:35-40). Officer Gray then stated, "If you move, I will shoot you in your fucking head." (DVD at 1:50).

While Officer Schlegelmilch walked toward his patrol car, Officer Witt, in an apparent attempt to break the glass and gain entry, began repeatedly striking the silver car's driver's side window with his flashlight. Officer Schlegelmilch handed Officer Witt a special tool, and Officer Witt used it to break the car window. Officer Witt opened the passenger door as Officer Gray holstered his service revolver and came around the back of the car. Both officers grabbed Burton and wrestled him to the ground. At that point, the view from the police camera is partially blocked by the silver car, but it appears that all three officers began to struggle with Burton, who repeatedly stated something that is indiscernible on the DVD. As Burton, who appeared to be writhing on the ground, shouted that he was not resisting, at least one officer began to punch him.[2] A fourth officer arrived, and the officers handcuffed Burton. Burton was then taken to the hospital, where he was treated for multiple injuries, including fractures of facial bones.

---

[2] At trial, the officers testified that they tased, kicked, and struck Burton in an attempt to subdue him.

4

On December 28, 2010, the State charged Burton with Count 1: resisting law enforcement, a class D felony; Count 2: battery to a law enforcement officer (Witt), a class A misdemeanor; Count 3: battery to a law enforcement officer (Gray), a class D felony; and Count 4: battery to a law enforcement officer (Schlegelmilch), a class D felony. A jury trial was held in February of 2012, and the jury found Burton guilty of Count 1 and not guilty of the battery counts. The trial court subsequently sentenced Burton to a suspended sentence of eighteen months and one year of probation. The trial court stated that good behavior on probation would result in the reduction of the felony conviction to a misdemeanor conviction. Burton now appeals his conviction.

DECISION

Burton contends that the trial court abused its discretion in refusing to give tendered jury instructions that addressed his right to defend himself and/or use force under the circumstances of this case.[3] The purpose of an instruction is to "inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Wilson v. State¸* 842 N.E.2d 443, 445 (Ind. Ct. App. 2006) (quoting *Overstreet v. State*, 783 N.E.2d 1140, 1163 (Ind. 2003), *cert. denied*), *trans. denied*. A trial court erroneously refuses to

---

[3] As the State notes in its brief, Burton failed to conform to Indiana Rule of Appellate Procedure 46(A)(8)(e) by not setting out a verbatim statement of the tendered instructions in the argument section of his brief. Such failure may result in waiver of the issue on review. *See Davis v. State*, 892 N.E.2d 156, 163 (Ind. Ct. App. 2008). Burton did, however, set out the tendered instructions in the statement of the facts section of his brief. Because our review is not significantly hindered, we choose to decide the issue on its merits.

give a tendered instruction, or part of a tendered instruction, if: (1) the instruction correctly sets out the law; (2) evidence supports the giving of the instruction; and (3) the substance of the instruction is not covered by the other instructions given. *Id.* at 445-46. As a general rule, instruction of the jury lies within the sound discretion of the trial court. *Id.*

The following are the salient instructions proposed by Burton:

Defendant's Proposed Jury Instruction No. 1: The law does not allow a police officer to use more force than necessary to [e]ffect an arrest, and if he does use such unnecessary force, he thereby becomes a trespasser, and an arrestee therefore may resist the arrester's use of excessive force by the use of reasonable force to protect himself against great bodily harm or death. If you find that Officers Witt, Schlegelmilch, and Gray used more force than necessary to effectuate the arrest, then the accused was permitted to resist the arrest to such an extent as necessary to protect himself from great bodily harm or death, and you must find him not guilty of resisting law enforcement.

Defendant's Proposed Jury Instruction No. 2: An individual has a right to act upon appearances of actual and immediate danger if he sincerely believes such apparent danger exists. It need be only apparent to a reasonable person under the circumstances. He will not be accountable for an error in judgment as to the amount of force necessary, provided he acted honestly. The law protects persons who feel compelled to act at such times even though in retrospect it is proved they have erred.

Defendant's Proposed Jury Instruction No. 3: Your decision as to whether the accused was acting in self-defense must be based on what the situation appeared to be to the accused rather than what the actual facts might have been.

Defendant's Proposed Jury Instruction No. 4: The defense of self-defense is defined by the law as follows:

6

No person in this State shall be placed in legal jeopardy of any kind whatsoever for protecting himself . . . by reasonable means necessary.

A person is justified in using reasonable force against another person to protect himself . . . from what he reasonably believes to be the imminent use of unlawful force . . . .

Notwithstanding the above, a person is not justified in using force if:

1. he is committing, or is escaping after the commission, of a crime;

2. he provokes unlawful action by another person with intent to cause bodily injury to the other person; or

3. he has entered into combat with another person or is the initial aggressor, unless he withdraws from the encounter and communicates to the other person his intent to do so and the other person nevertheless continues or threatens to continue unlawful action.

The State has the burden of disproving this defense beyond a reasonable doubt.

(App. 12-15).[4]

Among other reasons, the trial court refused to give the proposed jury instructions because the evidence did not support the giving of the instructions. In general, "a defendant in a criminal case is entitled to have the jury instructed on any theory of defense that has some foundation in the evidence." *Howard v. State*, 755 N.E.2d 242,

---

[4] The State contends that Burton fails to specify in his brief which of the four tendered instructions were erroneously refused. We ascertain from Burton's brief that he is specifically arguing the trial court abused its discretion in not giving Instructions 1 through 3 (pertaining to the right to defend against perceived excessive force) and Instruction 4 (pertaining to the statutory right to self-defense).

247 (Ind. Ct. App. 2001). We apply this rule even if the evidence is weak and inconsistent, so long as the evidence presented at trial has some probative value to support it. *Id.* Accordingly, Burton was entitled to a jury instruction on self-defense if there was some evidence that he was justified in using reasonable force against the officers to protect himself from what he believed to be the imminent use of unlawful force.[5]

The camera on Officer Schlegelmilch's car recorded a scene where Burton was sleeping and apparently pressing his car's accelerator while he slept. Burton was awakened by Officer Witt pounding on his driver's side window, Officer Schlegelmilch shining his flashlight through the windshield, and Officer Gray pounding on the passenger's side window. Moments later, Officer Gray pointed his service revolver at Burton and demanded that he turn off the car and open the door, only to declare within the next few seconds that any movement would result in the officer shooting Burton in his "fucking head." (DVD at 1:50). Within a few more seconds, Officer Gray, who had just threatened to kill Burton, helped Officer Witt drag Burton from the car onto the ground. The officers then proceeded to fracture Burton's facial bones. While we recognize that the officers testified to different versions of what the DVD depicted, we must conclude that the DVD provides a strong evidentiary foundation that warrants the giving of the self-defense instruction.

---

[5] Instruction 4 partially follows the language of Indiana's self-defense statute. *See* Ind. Code § 35-41-3-2.

In addition, Burton was entitled to jury instructions on excessive force by police officers if there was some evidence that the officers' use of force was excessive, that is, objectively unreasonable under the Fourth Amendment in light of the facts and circumstances confronting the officers. *See Shoultz v. State*, 735 N.E.2d 818, 823-24 (Ind. Ct. App. 2000) (citing *Graham v. Connor*, 490 U.S. 386, 395-97 (1989)), *trans. denied*.[6] When considering whether police force is unreasonable, courts consider various factors including, "the severity of the crime at issue; whether the suspect poses an immediate threat to the safety of the officers or others"; and whether the suspect "is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 824. The "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. (citing *Graham*, 490 U.S. at 396). However, "'the reasonableness inquiry' in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstance confronting them, without regard to their underlying intent or motivation." *Id*. (citing *Graham*, 490 U.S. at 396-97).

---

[6] Here, the trial court cited as one of its reasons for refusing to give Proposed Jury Instruction No. 1 that our supreme court's initial decision in *Barnes v. State*, 946 N.E.2d 572 (Ind. 2011), *aff'd on reh'g*, 953 N.E.2d 473 (2011), a case addressing the use of force against unlawful entry of one's home, had the effect of overturning *Shoultz*. We note that *Barnes* did not address the facts and circumstances of *Shoultz* and did not overturn the case. In addition, the *Barnes* decision made no mention of *Wilson v. State*, 842 N.E.2d 443 (Ind. Ct. App. 2006), *trans. denied*, the case that forms the basis for Proposed Jury Instruction No. 1.

There is no doubt that the DVD provides evidence that a recently awakened Burton could have been confused and/or scared for his life when Officer Gray threatened to shoot him, Officer Witt broke into the car, and both officers pulled him out of the car and threw him to the ground. The DVD provides evidence from which a jury could conclude that Burton was not an immediate threat to the officers or anyone else; indeed, the officers were investigating a non-injury accident where a sleeping Burton allowed his vehicle to bump into another vehicle. Furthermore, the DVD can be reasonably interpreted to show that Burton offered no resistance prior to being pulled from the car and only defensive resistance to multiple blows from three officers after being thrown to the ground. Again, while we recognize that the officers testified to different versions of what occurred, we conclude that there is also a strong evidentiary foundation to warrant the giving of tendered Instructions 1 through 3.

A trial court's refusal to give tendered instructions is subject to harmless error analysis. *Snell v. State*, 866 N.E.2d 392, 399 (Ind. Ct. App. 2007). In determining whether the refusal warrants reversal, we must assess whether the defendant was prejudiced by the trial court's failure to give the instruction. *Bragg v. State*, 695 N.E.2d 179, 180 (Ind. Ct. App. 1998).

In the present case, the jury was not instructed that Burton was justified in protecting himself under circumstances where the DVD showed that the police officers may have used excess force to extract a recently awakened and dazed Burton from the car

10

and to subdue him as he tried to protect himself from an officer who had threatened to kill him for no apparent reason. The jury would have been so apprised if the trial court had given the tendered instructions. Without the instructions, the jurors were permitted to find Burton guilty of resisting law enforcement even if they believed Burton's claim that he lawfully used reasonable force to protect himself from the threat of great bodily harm.[7] The trial court's error was not harmless, and the conviction must therefore be vacated. *See id.*

We reverse and remand with instructions that the trial court vacate the conviction.

FRIEDLANDER, J., and BROWN, J., concur

---

[7] The conflict experienced by the jury is illustrated by the following comments made by the trial judge at Burton's sentencing hearing:

> [T]he jury had some difficulty with this case. And some difficulty reaching the conclusion that they did.

> A comment was made to me by . . . I don't know who, but by one of the jurors, when they were leaving and essentially saying to me, "Well, Judge, just remember when you sentence Mr. Burton that he's already gotten his punishment."

* * * *

> And quite honestly, I don't get it. I mean, I really don't. I don't understand why this happened like this. I don't understand why it had to happen like this.

(Tr. 400-01).