Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 09 2013, 6:26 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID L. JOLEY**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRANDON T. WRIGHT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A04-1211-CR-609 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable John F. Surbeck, Jr., Judge
The Honorable Marcia L. Linsky, Magistrate
Cause No. 02D06-1204-CM-2296

**July 9, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Brandon T. Wright appeals his conviction for class A misdemeanor resisting law enforcement. He contends that the trial court abused its discretion when it refused to give to the jury his proposed jury instruction regarding the right to resist excessive force. He also contends that the State presented insufficient evidence to support his conviction. Concluding that no abuse of discretion occurred and that the State presented sufficient evidence, we affirm Wright's conviction.

**Facts and Procedural History**

On April 20, 2012, Fort Wayne Police Officer Rod Bradtmueller was dispatched to a home in response to a domestic dispute after it was reported that Wright was on the scene with a gun. When Officer Bradtmueller arrived at the home, he observed two females standing on the sidewalk, another female sitting inside a car parked in a driveway, and Wright standing next to the car. A few other people were gathered nearby.

As Officer Bradtmueller approached, he asked, "Who has the gun?" Tr. at 144. One of the females standing on the sidewalk pointed at Wright and said, "He does." *Id*. at 145. Officer Bradtmueller pulled out his gun and did not point it at anyone, but just had it "low ready." *Id*. Officer Bradtmueller then repeatedly ordered Wright to show him his hands. Wright, whose left hand was in his pocket, did not comply and instead said, "I ain't doing anything." *Id*. at 147. At this point, two additional officers, Officer Brian Juricak and Officer Cameron Norris, arrived on the scene.

Because Wright refused to remove his hand from his pocket, Officer Bradtmueller ordered Wright to get on the ground. Wright did not comply with Officer Bradtmueller's orders. Officer Norris approached Wright from the left side and also ordered Wright to get on the ground. When Wright again refused, Officer Norris reached out for Wright's left arm. Wright removed his hand from his left pocket, and Officer Norris saw a "flash of silver." *Id.* at 190. This startled Officer Norris until he saw that it was a cluster of keys in Wright's fist. Officer Norris, who is five feet six inches tall and 150 pounds, then grabbed Wright's left arm in order to take him to the ground. Wright, who is approximately five feet eleven inches tall and 250 pounds, jerked his arm away from Officer Norris and looked as if he was reaching toward the waistband of his pants. Officer Norris grabbed Wright's left forearm, but Wright forcefully pulled away again. Officer Norris moved his left arm under one of Wright's armpits and placed his right arm across Wright's shoulder to try to gain some compliance. Wright began to back into Officer Norris, and as he "drove back approximately a step or two," Officer Norris "used that same momentum" to turn and direct Wright to the ground. *Id.* at 198.

Officer Norris and the other officers attempted to keep Wright on the ground, but Wright just kept pushing back up into the officers. All the while, the officers continued to give Wright verbal commands to show his hands and comply with the officers. As Officer Norris attempted to get Wright's left arm behind his back, Wright repeatedly pulled his arm away. After much struggling, Officer Norris was eventually able to get Wright's left arm in a position where Officer Juricak could handcuff that wrist. Officer Bradtmueller worked on

3

the right arm and also eventually got it in a position where Officer Juricak could handcuff that wrist. Even after being handcuffed, Wright continued to attempt to get up by pushing his back off the ground and into the officers. At one point, Wright yelled for Officer Norris to get his knee "off [my] f***ing neck." *Id*. at 172. Wright told the officers that he was going to "sue" them and "get paid." *Id*.

The State charged Wright with class A misdemeanor resisting law enforcement, class B misdemeanor disorderly conduct, and class B misdemeanor public intoxication. The State subsequently dismissed the public intoxication charge. A jury trial was held on November 8, 2011. The jury found Wright guilty of class A misdemeanor resisting law enforcement and not guilty of class B misdemeanor disorderly conduct. This appeal followed.

**Discussion and Decision**

*I. Jury Instruction*

Wright first contends that the trial court abused its discretion in rejecting his proposed jury instruction 5 regarding the right to resist excessive force. The purpose of jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Fowler v. State*, 900 N.E.2d 770, 773 (Ind. Ct. App. 2009). When evaluating a trial court's rejection of a tendered instruction, we look to: (1) whether the tendered instruction correctly states the law, (2) whether there is evidence in the record to support giving the instruction, and (3) whether the substance of the proffered instruction is covered by other instructions. *Short v. State*, 962 N.E.2d 146, 150 (Ind. Ct. App. 2012). As a general rule, instruction of the jury

4

lies with the sound discretion of the trial court and is reviewed only for an abuse of that discretion. G*ravens v. State*, 836 N.E.2d 490, 493 (Ind. Ct. App. 2005), *trans. denied* (2006).

Wright's proposed jury instruction 5 provided:

> The law does not allow a peace officer to use more force than necessary to effect an arrest, and if he does use such unnecessary force, he thereby becomes a trespasser, and an arrestee therefore may resist the arrester's use of excessive force by the use of reasonable force to protect himself against great bodily harm or death. If you find that the officer used more force than necessary to effectuate the arrest, then the accused was permitted to resist the arrest to such an extent as necessary to protect himself from great bodily harm or death, and you must find him not guilty of resisting law enforcement.

Appellant's App. at 18. The trial court refused to give Wright's proposed instruction after concluding that the evidence did not support the giving of such instruction.

As a general rule, a defendant in a criminal case is entitled to have the jury instructed on any theory of defense that has some foundation in the evidence, even if the evidence is weak or inconsistent. *Burton v. State*, 978 N.E.2d 520, 525 (Ind. Ct. App. 2012). Therefore, a defendant is entitled to a jury instruction on excessive force by police officers if there is some evidence that the officers' use of force was excessive, that is, objectively unreasonable under the Fourth Amendment in light of the facts and circumstances confronting the officers. *Id*. at 526. When considering whether police force is unreasonable, the court considers a variety of factors, including the severity of the crime at issue; whether the suspect poses an immediate threat to the safety of the officers or others; and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id*. The reasonableness of a particular use of force must be judged objectively from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id*. The question is whether the

5

officers' actions are objectively reasonable in light of the facts and circumstances confronting them and without regard to their underlying intent or motivation. *Id*.

Wright relies heavily on our decision in *Burton*, in which we concluded that the trial court abused its discretion in refusing to instruct the jury on the right to resist excessive force. However, in that case, an excessive force instruction was supported by the evidence. In *Burton*, police responded to the scene of a non-injury car accident where a sleeping defendant had allowed his vehicle to bump another vehicle. *Id*. Officers approached the defendant as he was sleeping in a car, awakened him, threatened to shoot him in the head, broke into the car, pulled him out of the car, threw him to the ground, and delivered blows to his face which fractured several facial bones. *Id*. A DVD recording of the event clearly showed that the defendant offered no resistance prior to being pulled from the car and offered only defensive resistance to multiple blows from the three officers after being thrown to the ground. *Id*. Under those circumstances, we concluded that there was some evidence that officers may have used excessive force to extract a recently awakened and dazed defendant from the car and to subdue him as he tried to protect himself from an officer who had threatened to kill him for no apparent reason. *Id*. Therefore, the defendant was entitled to an instruction regarding the lawful use of reasonable force to protect himself from the threat of great bodily harm. *Id*.

By contrast, here, there is no evidence that officers used force that was disproportionate to the circumstances presented. Officers responded to a home regarding a domestic dispute and a report that Wright was on the scene with a gun. Witnesses at the

6

scene informed the first officer who arrived that Wright, who was standing by a parked car with one hand in his pocket, was armed. Wright disregarded officers' repeated requests to show them his hands. Wright then disregarded repeated requests to get on the ground. It was only after Wright refused to demonstrate that he was not a threat to the safety of the officers or others that the officers physically attempted to secure one of Wright's arms and force him to the ground. The evidence indicates that officers used only that force necessary to gain Wright's compliance. Under the circumstances, there was no evidentiary foundation to support Wright's proposed instruction on the right to resist excessive force. Accordingly, the trial court did not abuse its discretion in refusing the instruction.

## II. *Sufficiency of the Evidence*

Wright also asserts that the State presented insufficient evidence to support his conviction. When a defendant challenges the sufficiency of the evidence supporting a conviction, we do not reweigh the evidence or judge the credibility of the witnesses. *Joslyn v. State*, 942 N.E.2d 809, 811 (Ind. 2011). We consider only the probative evidence and reasonable inferences drawn therefrom that support the finding of guilt. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). We likewise consider conflicting inferences in the light most favorable to the conviction. *Id.* It is unnecessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* We will affirm the conviction unless no reasonable trier of fact could have found the elements of the crime proven beyond a reasonable doubt. *Id.*

To convict Wright of class A misdemeanor resisting law enforcement, the State was required to prove that Wright knowingly or intentionally forcibly resisted, obstructed, or interfered with a law enforcement officer while the officer was lawfully engaged in the execution of the officer's duties. *See* Ind. Code § 35-44-3-3.[1] In *Spangler v. State*, 607 N.E.2d 720 (Ind. 1993), our supreme court held that a person "forcibly resists" when "strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties." *Id*. at 723. The court has more recently explained that "the force involved need not rise to the level of mayhem" and that a "modest level of resistance" such as "stiffening one's arm when an officer grabs hold to position them for cuffing" would suffice as forcible resistance. *Graham v. State*, 903 N.E.2d 963, 965-66 (Ind. 2009). The "forcible" element is met when evidence demonstrates that "the police ha[ve] to get physical" to secure the defendant's compliance. *Id*. at 966.

Here, Wright used his physical strength and power to resist the officers. Wright yanked his arm away from Officer Norris's grasp at least twice and also used his body weight to "dr[i]ve back approximately a step or two" into Officer Norris. Tr. at 198. After going to the ground, Wright continued to push his body back up into the officers as they attempted to gain control of the situation. Wright struggled and refused to allow officers to handcuff him by continually pulling his arms away from the officers. This evidence is sufficient to show that Wright forcibly resisted the officers and therefore is sufficient to support his conviction for resisting law enforcement. We affirm his conviction.

---

[1] Recodified at Indiana Code Section 35-44.1-3-1 (July 1, 2012).

Affirmed.

ROBB, C.J., and FRIEDLANDER, J., concur.