ATTORNEY FOR APPELLANT
Suzy St. John
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gergory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana



FILED
Nov 10 2015, 12:10 pm
CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S02-1511-CR-644

JOHN HERNANDEZ,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49F08-1405-CM-023544
The Honorable David Hooper, Magistrate

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1410-CR-714

**November 10, 2015**

**David, Justice.**

Oliver Gray was pulled over by Indianapolis Metropolitan Police for not having a properly displayed license plate on the vehicle he was driving. John Hernandez was the only passenger in the vehicle when the traffic stop occurred. Upon discovering that Gray was also driving with a suspended license, he was placed under arrest. Although Hernandez was not under arrest, the

police requested that he exit the vehicle so an inventory search could be conducted and the vehicle could be towed. Immediately upon exiting the vehicle, Hernandez put his hands up and informed police he had a handgun in his pocket. The handgun was safely retrieved by police. Because Hernandez was not licensed to carry a handgun, he was also placed under arrest.

Hernandez was charged with carrying a handgun without a license and went to trial. At trial, Hernandez repeatedly testified that during the traffic stop Gray had been in possession of the handgun but threatened Hernandez into taking the gun from him. Gray told Hernandez he would not go back to jail and instructed him to take the gun "or else." Hernandez knew of Gray's criminal history and was fearful that he would be shot if he refused to take the handgun. He also feared that Gray may start shooting others if Gray maintained possession of the gun. Therefore, Hernandez took the handgun, but asserted at trial that he had done so only out of necessity. At the conclusion of the evidence, the trial court denied giving Hernandez's tendered final jury instruction on the defense of necessity. Hernandez was found guilty and was convicted of carrying a handgun without a license.

Because Hernandez presented some evidence to support the defense of necessity instruction, we now hold that it was error for the trial court to have refused giving the instruction.

**Facts and Procedural History**

On May 5, 2014, John Hernandez was walking to the liquor store when his neighbor, Oliver Gray, approached him in a vehicle. Gray offered to give Hernandez a ride, which Hernandez refused multiple times. Hernandez did not want to accept the ride because he was aware that Gray was a dangerous felon. However, upon Gray's insistence, Hernandez eventually complied and accepted the ride from Gray.

During that time, Indianapolis Metropolitan Police Sergeant Charles Butler was patrolling the area and noticed a vehicle without a license plate affixed to the back. This was the vehicle

2

being driven by Gray. Sergeant Butler caught up to the vehicle and initiated a traffic stop. Gray did not immediately stop, but drove the vehicle into a nearby parking lot, and then drove through several rows of open spaces before bringing the vehicle to a stop.

When Sergeant Butler approached the vehicle, Gray immediately informed the officer that he did not have a driver's license, and Sergeant Butler soon discovered that Gray's license was in fact suspended. In the meantime, Officer Todd Wellmann arrived to provide backup to Sergeant Butler. Gray was arrested for driving without a license, and Officer Wellmann requested that Hernandez, the only other passenger in the vehicle, also exit the vehicle in order for the vehicle to be inventoried and towed. As Hernandez got out of the vehicle, he immediately informed Officer Wellmann that he had a "strap" in his pocket, which Officer Wellmann understood as street slang for having a gun. (Tr. at 76.) Hernandez put his hands straight up into the air without being asked, faced the vehicle and indicated with a hip movement which pocket the gun was in. Officer Wellmann recovered the handgun. Henandez did not have a permit to carry a handgun, and he was placed under arrest.

After being read his *Miranda* rights, Hernandez agreed to answer Officer Wellmann's questions. Hernandez told police that when Gray picked him up, he was aware that there was a handgun under the front passenger seat and that he had reached under the seat, picked up the gun, and put it in his pocket. Hernandez continued alluding to the fact that the handgun was not his, but it was not until Hernandez was a further distance away from Gray that he nodded affirmatively when asked whether the handgun belonged to Gray.

3

Hernandez was ultimately charged with Class A misdemeanor, carrying a handgun without a license.[1] At trial, Hernandez presented the defenses of duress and necessity. Hernandez testified that when the police initiated the traffic stop, Gray did not immediately stop the vehicle, but instead pulled a handgun out of the waistband of his pants and told Hernandez that he was not "going back to jail because if he goes back to jail he'll do 14 to life." (Tr. at 99.) Gray then commanded Hernandez to "take the gun or else." (Tr. at 99.) Hernandez was immediately scared of what Gray might do if he did not take the gun and interpreted Gray's comment to mean that Gray would shoot him if he refused. Hernandez tried to put the handgun under the seat, but Gray insisted he put the gun in his pocket. Because Hernandez did not know what Gray would do with the gun if Hernandez refused, he held the gun, and then informed the police at his first opportunity.

Despite Hernandez's testimony, the trial court refused to give his tendered final jury instruction on necessity. Hernandez was ultimately found guilty of carrying a handgun without a license and was sentenced to 365 days, with 357 days suspended to probation.

Hernandez appealed, asserting that the trial court erred in excluding certain information about Gray's criminal history and arrest the day of the traffic stop, and the trial court erred in refusing to give his final instruction on the defense of necessity. In a memorandum decision, the Court of Appeals affirmed Hernandez's conviction, holding that the trial court's exclusion of Gray's serious violent felon status and the charges against Gray did not prejudice Hernandez's substantial rights, and the trial court did not err in refusing to give Hernandez's tendered final instruction on the defense of necessity. Hernandez v. State, No. 49A02-1410-CR-714 (Ind. Ct. App. June 17, 2015), *vacated*.

---

[1] Ind. Code § 35-47-2-1(a).

Upon Hernandez's petition, this Court now grants transfer, thereby vacating the Court of Appeals' decision. Ind. Appellate Rule 58(A). After review of the record, we hold that there was some evidence, even if not overwhelming, that warranted giving the defense of necessity instruction. And since there was no instruction, the jury could have found Hernandez guilty, even if they believed necessity had been proven. We also hold that the error prejudiced Hernandez. We vacate Hernandez's conviction and remand to the trial court for a new trial. We summarily affirm the Court of Appeals on the evidentiary issue raised by Hernandez. Ind. Appellate Rule 58(A)(2).

**Standard of Review**

Upon review of a trial court's decision to give or refuse a jury instruction, we apply an abuse of discretion standard. Treadway v. State, 924 N.E.2d 621, 636 (Ind. 2010) (internal citation omitted). "[T]his Court considers: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which are given." Guyton v. State, 771 N.E.2d 1141, 1144 (Ind. 2002) (internal citation omitted). Reversal arises "only if the appellant demonstrates that the instruction error prejudices his substantial rights." Treadway, 924 N.E.2d at 636 (internal citation omitted).

**Discussion**

In the present case, we address only the issue of whether the trial court erred in refusing to give a final jury instruction on the defense of necessity. A criminal defendant is entitled to have a jury instruction on "any theory or defense which has some foundation in the evidence." Toops v. State, 643 N.E.2d 387, 389 (Ind. Ct. App. 1994). "We apply this rule even if the evidence is weak and inconsistent so long as the evidence presented at trial has some probative value to support it." Howard v. State, 755 N.E.2d 242, 247 (Ind. Ct. App. 2001). However, even if the refusal to give a tendered jury instruction was error, this Court must assess whether the defendant was prejudiced

by the trial court's failure to give the instruction. Burton v. State, 978 N.E.2d 520, 526 (Ind. Ct. App. 2012). As such, we first examine whether the trial court erred in refusing to give Hernandez's tendered instruction on the defense of necessity, and then address whether that error impacted Hernandez's substantial rights.

## I.    Necessity Instruction

At trial, Hernandez tendered the following instruction:

> The defense of necessity is an issue in this case.
> The defense of necessity applies when:
> (1) the act charged as criminal was the result of an emergency and was done to prevent a significant harm;
> (2) there was no adequate alternative to the commission of the act;
> (3) the harm caused by the act was not disproportionate to the harm avoided;
> (4) the Defendant had a good-faith belief that his/her act was necessary to prevent greater harm;
> (5) the Defendant's belief was objectively reasonable under all the circumstances of the case; and
> (6) the Defendant did not substantially contribute to the creation of the emergency.
> The State has the burden to prove beyond a reasonable doubt that the defendant was not acting out of necessity, and may do so by disproving any one of the above facts.

(App. at 58.) The parties do not dispute that the tendered instruction is an accurate statement of the law or whether the substance of the instruction was covered by another instruction. As such, we must only determine whether there was evidence in the record to support giving the necessity instruction.

In evaluating whether the evidence supports a necessity instruction, the six factors provided in Hernandez's offered instruction substantially recites the factors set out in Toops. These six factors must be present in order to establish a necessity defense. See Toops, 643 N.E.2d at 390; See also Patton v. State, 760 N.E.2d 672, 676 (Ind. Ct. App. 2002). As such, if Hernandez

6

presented some evidence that could support finding each of the six factors, it was error for the trial court to refuse the necessity instruction.

Our review of the record demonstrates that the testimony presented at trial provided at least some evidence of each of the six Toops factors. First, throughout Hernandez's testimony he repeatedly expressed the danger he believed was present when Gray told him to take the gun, which provides some evidence of the first, fourth, and fifth factors. Specifically, Hernandez explained multiple times why he felt threatened by Gray and that he believed Gray was capable of harming him and others, including the police initiating the traffic stop. When Hernandez was asked why he took possession of the gun instead of refusing or trying to give it back he explained, "I didn't know what [Gray] was going to do with it, I didn't know if [Gray] was going to shot [sic] his way out or just start to shoot people. I know that at least if it was in my pocket that nobody would get hurt." (Tr. at 101.) Hernandez believed that "[a]nybody that was around" was potentially in danger, and that Gray was the last person he would want to have a gun so he "put it in [his] pocket so nobody would get hurt." (Tr. at 109.) This testimony indicates that Hernandez believed he was in a serious, even possibly an emergent, situation and that he needed to comply with taking the gun to avoid harm to himself or others. Given Gray's insistence that he was not going to go back to jail, his nervous demeanor while he was trying to give Hernandez the gun, and Hernandez's knowledge that Gray had a violent criminal history, Hernandez's subjective beliefs could have been seen as reasonable.

Hernandez also provided testimony to support the second factor, that there was no adequate alternative to taking possession of the gun. Hernandez and Gray were the only two individuals in the vehicle when the police initiated the traffic stop. Gray specifically told Hernandez that he did not want to go back to jail and for Hernandez to put the gun in his pocket "or else." (Tr. at 99.) Hernandez believed that if he did not take the gun Gray would shoot him. Moreover, when Hernandez attempted to put the gun under the seat, rather than hold it on his person, Gray would not allow him and told him again to the put the gun in his pocket. Hernandez also did not have the opportunity to simply walk away, as the vehicle was moving at the time of Gray's demand.

7

Third, there was little to no harm caused by Hernandez's brief possession of the gun. Gray handed Hernandez the gun just before the vehicle was pulled over. Upon being asked to exit the vehicle, Hernandez immediately informed police that he had a gun in his pocket, raised his hands, and placed them on the vehicle so the police could take the gun. The police were able to safely recover the hangun without any disruptions. This certainly seems less dangerous than leaving the gun in the possession of Gray, who had just told Hernandez that he refused to go back to jail, and if he does go back, he will be in jail for fourteen years to life.

Finally, Hernandez's testimony also provided some support for the proposition that he did not substantially contribute to the emergency situation. Hernandez explained that he had only been walking to the store when Gray pulled up next to him and insisted upon giving him a ride. (Tr. at 97.) The traffic stop then occurred due to Gray's vehicle not having the license plate properly displayed. Other than agreeing to get into the car with Gray, Hernandez seemingly did little else to contribute to the resulting emergency of Gray attempting to get rid of a handgun in his possession during a traffic stop.

Thus, after reviewing the record, it appears that there is at least some evidence supporting each element of a necessity defense. Even if there is only a "scintilla" of evidence in support of a criminal defendant's proposed defense instruction, it should be left to the province of the jury to determine whether that evidence is believable or unbelievable. Howard, 755 N.E.2d at 247-48. In the present case, it likewise should be left to the jury to determine whether Hernandez unlawfully possessed the handgun out of necessity. As such, the trial court abused its discretion in failing to give the final instruction of necessity to the jury.

Moreover, we also conclude that the failure to give such an instruction burdened Hernandez's substantial rights. "In determining whether the refusal [to give a tendered instruction] warrants reversal, we must assess whether the defendant was prejudiced by the trial court's failure to give the instruction." Burton, 978 N.E.2d at 526. In this instance, we liken the failure to give

an instruction on a lawful defense with the giving of an erroneous instruction. Both circumstances present the same risk that the failure to properly instruct the jury impacted the jury's ultimate decision. "A conviction must be reversed if instructions are inconsistent and calculated to mislead the jury or leave it in doubt as to the law." Harrington v. State, 413 N.E.2d 622, 626 (Ind. Ct. App. 1980) (citing Brewer v. State, 253 Ind. 154, 252 N.E.2d 429 (1969)). As such, "[r]eversal is required if the jury's decision may have been based upon an erroneous instruction." Harrington, 413 N.E.2d at 626 (internal citation omitted). Here, the failure to give an instruction on the defense of necessity may have impacted the jury's decision on Hernandez's guilt or innocence.

To demonstrate this potential impact, even if the jury believed that Hernandez: (1) took possession of the gun due to an emergency situation and only to avoid substantial danger; (2) had no adequate alternative to taking possession of the gun; (3) the harm caused by Hernandez's possession of the gun was less than the harm potentially avoided; (4) Hernandez subjectively believed that taking possession of the gun would prevent a greater harm; (5) that belief was objectively reasonable; and (6) Hernandez did not substantially contribute to the situation which led to this emergency, the jury could have found Hernandez guilty of possessing a handgun without a license. The guilty verdict would have then been entered despite Hernandez's lawful defense of necessity. As such, the trial court's error was not harmless. See, e.g., Burton, 978 N.E.2d at 526-27 (holding that the failure to give jury instruction on excessive force by a police officer was not harmless error where evidence in the record supported giving the instruction and "[w]ithout the instructions, the jurors were permitted to find [the defendant] guilty of resisting law enforcement even if they believed [the defendant's] claim that he lawfully used reasonable force to protect himself from the threat of great bodily harm").

**Conclusion**

Because Hernandez presented sufficient evidence to have the jury instructed on his defense of necessity, and the error impacted Hernandez's substantial rights, we reverse the trial court, vacate Hernandez's conviction, and remand for a new trial.

Rush, C.J., Dickson, Rucker, and Massa, J.J., concur.