PYLE, Judge
dissenting.
[29] If I were presented with the script of the latest Star Wars movie, The Force Awakens, before it was released, and asked whether it was a good story, I could probably make an independent assessment concluding that it was excellent. However, I would not be in the best position to' make that judgment. Quite simply, I did not see the movie. I did not see the mind-blowing special effects; I did not see the facial expressions of the actors giving meaning to the story; I did not hear the humor, passion, and sorrow that filled the voices of the actors; and I did not hear John Williams’s legendary soaring symphony. In fact, my limited perspective would impact the accuracy of my conclusion. As a result, if you really want to know whether the script is good, you need to go to the movie.
*300 [30] Likewise, at the appellate level, my colleagues and I are asked to make judgments based upon the reading of a script, a transcript. However, we are often not in the best position to make decisions about which.witnesses to believe or which piece of evidence is most important. This is true because we do not attend the movie; we are not present at the trial or hearing. It is precisely for this reason that when a defendant challenges his or her conviction on appeal, our standard of review consistently warns that we will not reweigh the evidence or judge the credibility of witnesses. Robinson v. State, 5 N.E.3d 362 (Ind.2014).
[31] Jurors are in the best position to make determinations about who and what to believe. They get to see the facial expressions of witnesses; they get to hear the pain or remorse in the voices of victims, family members, and defendants; they get to watch body language; and they get to make judgments based on the intonation in a witness’s voice. None of these critical decision making factors are reflected in an appellate record.
[32] My able colleagues assert that the record in this case is devoid of evidence and reasonable inferences that would support Love’s convictions for mistreatment of a law enforcement animal and . resisting law enforcement. My colleagues believe that the video: (1) shows that Love complied which the officer’s instructions; and (2) contradicts the testimony of the officers. I respectfully disagree.
[33] After a five-minute chase through the streets of South Bend, the video shows Love coming to a stop after pulling into an alley. At gunpoint, the officers order him out of the van, onto the ground, and tell Love not to move. (Tr. 81, Defendant’s Exhibit A). Instead, Love gets out of the van and starts walking to its rear. After reaching the rear of the van, Love then gets onto the ground. He does not remain still; Love’s hands are- out in front making gestures. Love then places his chin in the palm of his hand as if he is relaxing. At this point, the officers take action to arrest and gain his compliance. Because the video camera became obscured, the video does not show the ensuing altercation. The only evidence admitted to determine what occurred next was the testimony of witnesses.
[34] In my view, there was ample evidence from which a jury could reasonably infer beyond a reasonable doubt that Love interfered with a law enforcement animal and resisted law enforcement. It is the jury’s role to resolve any real or perceived conflicts in the evidence. In fact, this jury was instructed as follows: (1) ‘You are the only judges of the weight of both the physical evidence and the testimony—the believability, or “credibility”—of each of the witnesses.... [;]” (2) ‘You should try to fit the evidence to the presumption that the defendant is innocent.... [;]” (3) “Furthermore, you should evaluate the testimony of each witness in light of all relevant physical evidence, and the reasonable inferences drawn from such physical evi-dence_ [;]” (4).“In weighing the evidence to. determine what or whom you will believe, you should use your own knowledge, experience and common sense gained from day to day living .... [;]” and (5) ‘You should give the greatest weight to that evidence which convinces you most strongly of its truthfulness.” (App. 65) (emphasis added).
[35] Love- exercised his right to have the State’s case measured by a jury of his peers. - He exercised his right to represent himself, testified, and presented evidence. (Defendant’s Exhibit A). The State, bearing the burden of proof, presented its evidence through witnesses and exhibits. _ At the conclusion of the trial, the jury, prop *301 erly instructed, considered all of the evidence and decided that the State had proved its case beyond a reasonable doubt. Cf. Burton v. State, 978 N.E.2d 520 (Ind.Ct.App.2012) (conviction for resisting law enforcement was overturned because excessive force instruction was tendered and refused despite video showing clear evidence of abusive police conduct). Because I believe that my colleagues are substituting their judgment for that of the jury, I dissent. I would affirm the jury’s verdict. Why? Quite simply, I was not at the movie.