# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 20 2017, 8:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ruth Johnson
Marion County Public Defender Agency
Indianapolis, Indiana

Timothy J. O'Connor
O'Connor & Auersch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Rebecca Lawson, *Appellant-Defendant,* | November 20, 2017 |
| v. | Court of Appeals Case No. 49A02-1703-CR-445 |
| | Appeal from the Marion Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Marc T. Rothenberg, Judge |
| | Trial Court Cause No. 49G02-1602-MR-6182 |

**Kirsch, Judge.**

[1] Rebecca Lawson ("Lawson") was convicted, after a jury trial, of murder,[1] a felony, and attempted murder,[2] a Level 1 felony, and was sentenced to an aggregate term of eighty-five years in the Indiana Department of Correction. Lawson appeals her convictions and raises the following restated issue for our review: whether the trial court committed fundamental error when it failed to give a self-defense instruction to the jury.

[2] We reverse and remand.

## Facts and Procedural History

[3] Lawson and Patrick Brown ("Brown") had an on and off again relationship for several years, beginning in 2012. During this time, Brown also dated Cecelia Land ("Land"). Brown and Land had broken up sometime in 2015, but were back together again by February 2016.

[4] On February 12, 2016, Lawson sent Brown a text message asking if he wanted her to bring dinner over, and Brown responded that he was going to be working late. *State's Ex*. 89 at 4. Lawson texted Brown back a little later, and when he responded in an angry manner, she decided to drive over to Brown's house. Lawson drove to Brown's house and saw both Brown's car and Land's car in the driveway. Lawson pulled into the driveway and rolled down her window. Brown came outside and told her, "you should just go." *Tr. Vol. III* at 99. Land

---

[1] *See* Ind. Code § 35-42-1-1.

[2] *See* Ind. Code § 35-42-1-1; Ind. Code § 35-41-5-1(a).

was looking out the front door of the house and said, "what's going on." *Id*. Lawson had brought collars for Brown's dogs, and she handed those to him and started to drive away. At that time, Land had begun walking toward Lawson's car. Lawson observed Land throw her arms up in the air, and saw Brown restrain Land by grabbing her under the arms and pushing her back.

[5] Lawson then drove to a nearby Walgreen's, and while there, she texted Brown and told him that Land needed to leave. *State's Ex.* 89 at 5. When Brown did not answer her, Lawson texted him and informed him that she was coming back to his house to retrieve a gun that belonged to her that she had loaned to Brown. *Id*. at 6. The gun was important to her because it was a gift from her father, who was very ill. Brown still did not respond, so Lawson texted him that she was returning to his house to get her gun and other belongings because he had made his choice of who he wanted to be with. *Tr. Vol. III* at 101; *State's Ex*. 89 at 6.

[6] When Lawson returned to Brown's house, she parked her car in the driveway, and Brown came out immediately with Land following him. Lawson always kept a handgun with her, either in her purse or in a holster in her car. When she parked the car and saw Land coming out of the house, Lawson took the gun from her purse and put it in her lap. Lawson felt that she needed the gun because Land had previously threatened to "kick [her] ass." *Tr. Vol. III* at 115. At trial, Land admitted to having threatened to "kick [Lawson's] ass" during one phone call. *Tr. Vol. II* at 27.

[7]     As Land approached Lawson's car, Lawson yelled, "I have a gun and a gun permit," and Land responded, "I don't give a shit." *Id*. at 36. Brown was standing next to the driver's side window, which was open partially. Brown told Lawson to leave, and she responded that he needed to bring her gun. Land cursed at both Brown and Lawson and then began to turn and walk away. Lawson told Brown, "just go get my gun and I'll leave," but Brown saw the gun in Lawson's lap, and he reached into the car and attempted to grab it. *State's Ex*. 93 at 3, 11-12. Lawson told him not to grab her gun, and she grabbed it herself and pulled it back. Brown said, "I'll rip that mother fucker out of your hand," and Lawson yelled again for Brown to get her gun. *Id*. at 12. Brown then reached into the car again, grabbed Lawson's face and squeezed "really hard" while telling her to, "shut the fuck up!" *Id*. During this time, Land was coming closer to Lawson's car.

[8]     Brown had never been physically violent with Lawson before, and when he reached in and began squeezing her face, she was terrified. *Tr. Vol. III* at 102. Lawson had the gun in her hand, and she fired in Brown's direction, striking him in the chest. Land was approaching with something in her hand, so Lawson also fired in her direction, striking her twice in the face. The object in Land's hand was later determined to be a cellphone.

[9]     After realizing what had happened, Lawson dropped the gun in her seat and called 911. She told the dispatcher that she had shot two people. When the police arrived at the scene, Officer John Montgomery ("Officer Montgomery") of the Indianapolis Metropolitan Police Department was one of the first to

respond, and when he asked who shot who, Lawson told him, "I shot them." *Tr. Vol. II* at 100. Officer Montgomery observed several cell phones, articles of clothing, and part of a thumb on the ground. He also located a gun on the front seat of Lawson's car. Lawson was taken into custody. Brown later died of the gunshot wound to his chest. As a result of the gunshots wounds she sustained, Land lost her right eye, part of her thumb, and her sinus cavity and had to have part of her jaw reconstructed.

[10] On February 17, 2016, the State charged Lawson with murder and attempted murder. A jury trial was held, at which Lawson raised a claim of self-defense. This issue of self-defense was discussed by the trial court, defense counsel, and the State numerous times during the trial. The trial court indicated that it intended to give a jury instruction on self-defense. *Tr. Vol. III* at 60-66, 136-39. The State conceded that giving a self-defense instruction to the jury was proper. *Id*. at 136-37. During discussion on final jury instructions, defense counsel tendered a corollary final instruction regarding the subjective nature of a claim of self-defense. The trial court refused to give the tendered instruction, and in doing so, stated, "This instruction actually is already addressed in the self defense instruction that I have given, and it is addressed in the sense that the subjective nature is already addressed." *Id*. at 138. Despite this discussion about, and agreement to give, a self-defense instruction to the jury, the trial court did not give a self-defense instruction to the jury during final instructions. Neither party objected to the omission of the instruction. At the conclusion of

the trial, Lawson was found guilty of murder and attempted murder and was sentenced to an aggregate term of eighty-five years. Lawson now appeals.

## Discussion and Decision

[11] Generally, the manner of instructing the jury is a matter within the sound discretion of the trial court, which we review for an abuse of that discretion. *Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016). "Where, as here, the defendant failed to preserve an alleged instructional defect, the objection is waived, and reversal is warranted only in instances of fundamental error." *Id*. (citing *Wright v. State,* 730 N.E.2d 713, 716 (Ind. 2000)). Fundamental error occurs where there is a substantial blatant violation of basic principles and where, if not corrected, it would deny a defendant fundamental due process. *Id.* This exception to the general rule requiring a contemporaneous objection is narrow, providing relief only in egregious circumstances that made a fair trial impossible. *Halliburton v. State,* 1 N.E.3d 670, 678 (Ind. 2013). "A finding of fundamental error essentially means that the trial judge erred by not acting when he or she should have." *Whiting v. State*, 969 N.E.2d 24, 34 (Ind. 2012).

[12] Lawson argues that the trial court erred when it failed to instruct the jury as to her claim of self-defense. She contends that the evidence presented at trial supported giving the instruction and that it is clear that the trial court intended to instruct the jury on self-defense. Lawson further asserts that it was reversible error to not give a self-defense instruction because all of the parties agreed that the jury should be instructed as to self-defense, and the elements of self-defense

were discussed in closing arguments, and in the absence of an instruction, the jury was "left to cobble together the elements of self-defense as best it could." *Appellant's Br*. at 20. Lawson maintains that this was not sufficient, and she was denied a fair trial.

[13] A criminal defendant is entitled to have a jury instruction on any theory or defense which has some foundation in the evidence. *Hernandez v. State*, 45 N.E.3d 373, 376 (Ind. 2015). "'We apply this rule even if the evidence is weak and inconsistent so long as the evidence presented at trial has some probative value to support it.'" *Id*. (quoting *Howard v. State*, 755 N.E.2d 242, 247 (Ind. Ct. App. 2001)). However, even if the failure to give a tendered jury instruction was error, this court must assess whether the defendant was prejudiced by the trial court's failure to give the instruction. *Id*. (citing *Burton v. State*, 978 N.E.2d 520, 526 (Ind. Ct. App. 2012)).

[14] A valid claim of self-defense is a legal justification for an otherwise criminal act. *Richardson v. State*, 79 N.E.3d 958, 964 (Ind. Ct. App. 2017), *trans. denied*. "A person is justified in using reasonable force against another person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force." Ind. Code § 35-41-3-2. A claim of self-defense requires a defendant to have acted without fault, been in a place where he or she had a right to be, and been in reasonable fear or apprehension of bodily harm. *Id*.

[15] Here, the evidence presented at trial showed that Lawson had been involved in a relationship with Brown and that she went to his home to retrieve a handgun that she had loaned him. Although Brown told Lawson to leave, she responded that she would leave if he brought her the gun that she had loaned him. At that time, Brown noticed a handgun sitting in Lawson's lap and reached into the car and attempted to take the gun away from her. Lawson told him not to grab her gun and grasped it herself and pulled it back from Brown's reach. Brown then reached into the car again, gripped Lawson's face and squeezed "really hard" while telling her to, "shut the fuck up!" *State's Ex*. 93 at 12. During this time, Land was coming closer to Lawson's car. Because Brown had never been physically violent with Lawson before, when he reached in and began squeezing her face, she was terrified, and she fired in Brown's direction. At the same time, Land was approaching with something in her hand, so Lawson also fired in her direction.

[16] Based on this evidence, the trial court concluded that there was sufficient evidence to give an instruction on self-defense and indicated that it intended to give the jury the pattern jury instruction on self-defense. *Tr. Vol. III* at 60-66, 136-39. The State conceded that giving a self-defense instruction to the jury was proper. *Id*. at 136-37. We conclude that sufficient evidence was presented at trial to support the giving of a self-defense instruction.

[17] As stated above, it is clear that the trial court intended to instruct the jury as to self-defense. However, the instruction was inexplicably not given to the jury during final instructions. During the trial, evidence was presented to support

Lawson's claim of self-defense and the parties argued the issue during closing arguments. However, without an instruction to set out the elements of the defense of self-defense, the jury was not made aware of the exact elements that would need to be proven and were left to either assume that they were not allowed to consider a claim of self-defense or to guess how to apply the facts presented and the arguments made to the law. Therefore, this failure to instruct the jury on self-defense denied Lawson fundamental due process and made a fair trial impossible. *Halliburton,* 1 N.E.3d at 678. Because the trial court failed to act when it should have, we find that fundamental error occurred. *Whiting*, 969 N.E.2d at 34. Based upon the error in failing to instruct the jury on Lawson's claim of self-defense, we reverse and remand to the trial court for a new trial.

Reversed and remanded.

Najam, J., and Brown, J., concur.