## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 07 2017, 7:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Suzanne St. John
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Steven L. Small,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 7, 2017

Court of Appeals Case No.
42A04-1703-CR-606

Appeal from the Knox Superior Court

The Honorable Gara U. Lee, Judge

Trial Court Cause No.
42D01-1607-F5-27

**May, Judge.**

[1] Steven L. Small appeals his conviction of Level 5 felony dealing in methamphetamine.[1]  He argues the trial court abused its discretion when it refused to give his proffered jury instructions on accomplice liability.  As the substance of his proffered instructions was covered by the court's instruction, we affirm.

# Facts and Procedural History

[2] On July 1, 2016, around 9:00 p.m., Indiana Conservation Officer Shane Cooper stopped his car near the Kessinger Ditch in Knox County.  A white car was parked in an area where local citizens park to fish and Officer Cooper wanted to make sure those fishing were complying with the State's fish and game laws.  As Officer Cooper approached the parked car, he noticed "a couple of fishing poles, and a bucket, and I think a backpack on the actual bridge itself, but I didn't see anybody around."  (Tr. Vol. 1 at 208.)  While Officer Cooper was standing at the car, Small walked up from the ditch and began to make "small talk," (*id*. at 209), but the conversation was "really weird because he was just talking unusually loud . . . ."  (*Id*. at 210.)  Even when Small got "right next to" Officer Cooper, (*id*.), his voice was "unusual for being this close."  (*Id*. at 211.)

[3] As the two men discussed Small's fishing, Officer Cooper began to "hear noises coming – some clanking and a couple of splashes coming from underneath the

---

[1] Ind. Code § 35-48-4-1.1(a)(1) (2016).

bridge into the creek." (*Id*.) Officer Cooper asked Small who was under the bridge, and Small "said he didn't know." (*Id*.) Officer Cooper yelled "Conservation Officer[,] you need to come up," (*id*. at 213-14), but no one replied or appeared, and the noises continued. Officer Cooper told Small they were going down to the ditch and had Small go in front of him. On the way down the path, Small stopped twice and complained the path was too steep. Officer Cooper forced him to keep going.

[4] When they arrived at the bottom of the path, Officer Cooper saw

> a five gallon bucket and a blue cooler. There's some brown napkins that's got a white powdery substance on it. There was a cell phone, a bank pole,[2] and I noticed there's a wooden spoon with a -- with stripped lithium batteries floating in the water. I assumed it was lithium, because it was still bubbling. I could see the bubbling in the water.
>
> At the same time there's an older female on the same side [of the creek], but on the other side of the bridge right here frantically trying to run up the hill back to the roadway.

(*Id*. at 217) (errors in original) (footnote added). Officer Cooper ordered the woman to stop, but she did not slow down. Officer Cooper let the woman leave and focused on Small.

---

[2] A bank pole is "a PVC pipe, between four and six feet long, you actually to one end put a string on it with a hook and essentially drive it into the bank, and then bait it and that's essentially a bank pole." (Tr. Vol. 1 at 219.)

[5] Officer Cooper asked Small what was in the cooler, and Small replied, "I don't know it's not mine." (*Id*. at 218.) Small then proceeded to check his "bank pole, which is located pretty much right next to the cooler, within a couple feet." (*Id*. at 219.) Officer Cooper opened the cooler and found:

> [T]here was campground or camp fuel, a red bottle of Liquid Fire. There was Morton salt. There was a black backpack and channel locks, wire cutters, and then there was also a bottle I think of Repel, and some window glass cleaner.

(*Id*. at 220.) At that point, Officer Cooper placed Small in handcuffs and took him back up to the roadway. When they reached the top, the woman was fleeing in the white car. Officer Cooper conducted a search of Small incident to arrest and found he was in possession of "clear plastic gloves, a pocket knife, three alkaline batteries, and some vice grips." (*Id*. at 223.) After initially denying he knew who was under the bridge, Small admitted the woman's name was Theresa Merydith.

[6] Another officer field-tested the white, powdery substance on the napkin and found it contained methamphetamine. The cell phone belonged to Merydith, the woman who fled the scene in the white car. Officers lifted fingerprints off the items in the cooler, and a fingerprint lifted off the can of camp fuel matched Small's left ring finger. Lab tests revealed the powdery substance on the napkin included 0.11 grams of methamphetamine.

[7] The State charged Small with Level 5 felony dealing in methamphetamine. A jury found him guilty. The court imposed a six-year sentence, with five years

suspended to formal probation. It ordered Small to serve three years of the probation in community corrections work release and two years on supervised probation.

# Discussion and Decision

[8] The State charged Small with Level 5 Felony dealing in methamphetamine based on an allegation Small "knowingly or intentionally manufacture[d] methamphetamine." (App. Vol. 2 at 77 (citing Ind. Code § 35-48-4-1.1(a)(1).) A defendant may, however, be charged as a principal and convicted as an accomplice. *Castillo v. State*, 974 N.E.2d 458, 466 (Ind. 2012). "A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense . . . ." Ind. Code § 35-41-2-4. To be convicted as an accomplice, a defendant need not participate in every element of the offense. *Castillo*, 974 N.E.2d at 466. Rather, an accomplice can be found guilty even when the crime is largely completed by the principle. *Id*. at 467.

[9] Small challenges the trial court's refusal to give two instructions Small proffered regarding accomplice liability.

> Upon review of a trial court's decision to give or refuse a jury instruction, we apply an abuse of discretion standard. *Treadway v. State*, 924 N.E.2d 621, 636 (Ind. 2010) (internal citation omitted). "[T]his Court considers: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which are given." *Guyton v. State*, 771 N.E.2d 1141,

1144 (Ind. 2002) (internal citation omitted). Reversal arises "only if the appellant demonstrates that the instruction error prejudices his substantial rights." *Treadway*, 924 N.E.2d at 636 (internal citation omitted).

*Hernandez v. State*, 45 N.E.3d 373, 376 (Ind. 2015). For prejudice to arise, "the instructions taken as a whole must misstate the law or otherwise mislead the jury." *Brooks v. State*, 895 N.E.2d 130, 132 (Ind. Ct. App. 2008).

[10]   Small's proposed instructions stated:

> [A] defendant's presence during the commission of the crime or his/her failure to oppose the crime are, by themselves, insufficient to establish accomplice liability.
>
> * * * * *
>
> In order to sustain a conviction as an accomplice, there must be evidence of the defendant's affirmative conduct, either in the form of acts or words, from which an inference of common design or purpose to effect the commission of a crime may reasonably be drawn.

(App. Vol. 2 at 89.)

### (1) Whether the Instructions Correctly State the Law

[11]   Both of those instructions, as Small notes, are statements of law taken from *Vandivier v. State*, 822 N.E.2d 1047, 1054 (Ind. Ct. App. 2005), *trans. denied*. *Vandivier* did not, however, address the use of those statements of law as jury instructions; rather, the issue in *Vandivier* was sufficiency of the evidence. *See*

822 N.E.2d at 1054. Statements of law pulled from appellate court opinions are not always "proper language for instructions to a jury." *Gravens v. State*, 836 N.E.2d 490, 494 (Ind. Ct. App. 2005), *trans. denied*. "[T]he preferred practice is to use the pattern jury instructions," *id.* at 493, and that is what the trial court did here.

[12] Nevertheless, we cannot say those proposed instructions are incorrect statements of law. *See Castillo*, 974 N.E.2d at 466 ("That a defendant was present during the commission of a crime and failed to oppose the crime is not sufficient to convict her."); *Anthony v. State*, 56 N.E.3d 705, 714 (Ind. Ct. App. 2016) ("'[T]here must be evidence of his affirmative conduct, either in the form of acts or words, from when an inference of a common design or purpose to effect the commission of a crime may be reasonably drawn.'") (quoting *Griffin v. State*, 16 N.E.3d 997, 1003 (Ind. Ct. App. 2014)), *trans. denied*. Thus, we move to the second part of the analysis.

### *(2) Whether the Record Supports Giving the Instruction*

[13] Small asserts the record contains "no dispute that the [sic] Small's instructions were supported by the evidence." (Br. of Appellant at 16.) We agree the record supported the giving of instructions on the theory of accomplice liability. As the State notes, "it was already agreed that a pattern jury instruction on accomplice liability would be provided." (Br. of Appellee at 13.) Thus, there is no disagreement that the record supported the giving of instructions on accomplice liability. *See, e.g.*, *Brooks*, 895 N.E.2d at 134 (record supported giving of instruction on accomplice liability when evidence permitted inference

Brooks was working in concert with associate who possessed drugs to be sold). As this factor is undisputed, we examine the third part of the analysis.

### (3) Whether the Tendered Instructions are Covered by Provided Instructions

[14] Finally, we turn to whether the substance of Small's tendered instructions was covered by the substance of the accomplice liability instruction the jury received. The court's instruction regarding liability as an accessory provided:

### <u>COURT'S FINAL INSTRUCTION NO. 5</u>

Aiding, inducing or causing dealing in methamphetamine is defined by law as follows:

A person who, [sic] knowingly or intentionally aids or induces or causes another person to commit an offense, commits that offense.

A person may be convicted of aiding or inducing or causing dealing in methamphetamine even if the other person has not been prosecuted for the dealing in methamphetamine, has not been convicted of the dealing in methamphetamine, or has been acquitted of the dealing in methamphetamine.

Before you may convict the Defendant, the State must have proved each of the following elements beyond a reasonable doubt:

1. The Defendant

2. knowingly or intentionally

3. aided or induced or caused

4. Teresa Merydith to commit the offense of dealing in methamphetamine, defined as knowingly or intentionally manufactured methamphetamine. [sic]

5. by knowingly or intentionally helping prepare items for, or concealing from law enforcement, the manufacture of methamphetamine.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the Defendant not guilty of the crime of Dealing in Methamphetamine, a Level 5 felony, as charged in the Information.

If the State proved each of these elements beyond a reasonable doubt, you should find the Defendant guilty of the crime of Dealing in Methamphetamine, a Level 5 felony, as charged in the Information.

(App. Vol. 2 at 96-7.)

[15] Small's first proposed instruction covered the idea that the defendant's mere presence or failure to oppose the crime are not sufficient to establish accomplice liability. (*See id*. at 89.) While the pattern jury instruction does not mention the concepts of "mere presence" or "failure to oppose," the instruction did require a guilty verdict be based on the jury finding beyond a reasonable doubt that Small "knowingly or intentionally help[ed] prepare items for, or conceal[ed] from law enforcement, the manufacture of methamphetamine." (*Id*. at 96.) If Small helped prepare items or concealed Merydith's manufacture from Officer Cooper

then, as a matter of logic, he was neither "merely present" nor simply "failing to oppose." Thus, the substance of the first proposed jury instruction was covered by the pattern jury instruction.

[16] Further, if Small helped prepare items or concealed Merydith's manufacture from Officer Cooper then Small was, in fact, committing affirmative acts. As Small's second proposed jury instruction emphasized the need for the defendant to have committed "affirmative conduct, either in the form of acts or words, from which an inference of common design or purpose . . . may reasonably be drawn," (*id*. at 89), the substance of Small's second proposed instruction was also covered by the instruction provided by the trial court.

[17] Because the substance of both of Small's proposed instructions on accomplice liability was covered by the pattern jury instruction that the trial court gave to the jury, Small was not prejudiced by the court's denial of his instructions. *See, e.g.*, *Townsend v. State*, 934 N.E.2d 118, 130 (Ind. Ct. App. 2010) (no error in declining tendered instructions when substance covered by other instructions given), *trans. denied*. The court did not abuse its discretion in declining to also give Small's instructions. Accordingly, we affirm.

[18] Affirmed.

Barnes, J., and Bradford, J., concur.