## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 20 2020, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew D. Anglemeyer
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Devon Scott Bline,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 20, 2020

Court of Appeals Case No.
19A-CR-3067

Appeal from the Marion Superior Court

The Honorable Alicia A. Gooden, Judge

Trial Court Cause No.
49G21-1904-F3-12487

**Bailey, Judge.**

# Case Summary

Devon Scott Bline ("Bline") appeals his conviction, following a jury trial, for dealing in methamphetamine, as a Level 2 felony.[1] He raises one issue on appeal which we restate as whether the trial court abused its discretion when it gave the jury an instruction regarding the weight of the methamphetamine.

We affirm.

# Facts and Procedural History

On March 28, 2019, at approximately 3:00 p.m., Officer Daniel Hiser ("Officer Hiser") pulled over Bline's car for a traffic infraction. Bline was the driver and sole occupant of the car, an Impala. As Officer Hiser approached the driver's side of the vehicle, he saw a digital scale in the back seat. When asked for identification, Bline handed the officer an identification card. The officer recognized that Bline was not the person depicted on the card and asked Bline several questions about his identifying information. Bline initially claimed "it was him on the ID" card but subsequently admitted that it was not. Tr. at 118. Officer Hiser instructed Bline to exit the vehicle, and he placed Bline in

---

[1] Ind. Code § 35-48-4-1.1(a)(2), (e)(1).

Bline was also convicted of possession of a narcotic drug, as a Level 6 felony, I.C. § 35-48-4-6(a), and found to be a habitual offender, I.C. § 35-50-2-8(a). However, he does not address either of those dispositions in this appeal.

handcuffs. As Bline exited, Officer Hiser observed another black digital scale located in the pocket of the driver's side door.

[4] Another officer on the scene gathered the vehicle's VIN number and discovered that the Impala was stolen. Officer Hiser then searched the Impala. He retrieved the two digital scales he had observed previously and also discovered a butane lighter. Officer Hiser noticed that the trim around the gear shift of the center console was not attached to the vehicle. He lifted the console and found a firearm underneath it. Inside the glove compartment of the vehicle, Officer Hiser discovered two aluminum foil wrappers and loose pills. One of the foil wrappers contained 27.09 grams of methamphetamine, and the other contained 2.56 grams of heroin. Officer Hiser also found a roll of aluminum foil on the back-seat floorboard. In the trunk of the vehicle, Officer Hiser discovered some crushed pills and a bottle of pills prescribed to someone other than Bline.

[5] The State charged Bline with dealing in methamphetamine as a Level 2 felony, among other charges. Bline had a jury trial on November 12, 2019. Prior to the presentation of evidence at the trial, the court gave the jury sixteen preliminary instructions. Within the instructions, the jury was also told to base its decision on the evidence presented and the instructions on the law. The jury was told to "consider all of the instructions together. Do not single out any certain sentence, or any individual point, or instruction, and ignore the others." Tr. V. I at 104. The jury was also instructed to "fit the evidence presented to the presumption the defendant is innocent if you can reasonabl[y] do so." *Id.* at 106.

[6] The State presented the testimony of Officer Garland Cooper ("Officer Cooper"), an officer with the Indianapolis Metropolitan Police Department who works in the Southeast District Narcotics Unit. Officer Cooper has specialized training in drug identification and trends such as how drugs are manufactured, concealed, and trafficked, the cost of drugs, and the effects of drugs. Officer Cooper testified about the drug trends in Indianapolis. He stated that baggies and foil are the predominant packaging supplies for heroin, but methamphetamine is occasionally packaged in foil as well. Methamphetamine is commonly ingested by smoking the drug out of a glass pipe, and butane lighters are "consistent with drug use for lighting pipes and bowls." *Id*. at 123.

[7] Officer Cooper also testified about the differences and similarities between drug dealers and users. He stated that a person may be a user and dealer of illegal drugs at the same time. Dealers will make the most money by selling heroin and methamphetamine in one-gram transactions, and a half of a gram to a gram is the typical dosage for an individual use of methamphetamine. It is typical for drug dealers to carry a gun because robberies are common. It is not typical for a drug user to carry a gun. Drug dealers are very concerned with weight and will typically weigh out their drugs on digital scales. Drug users are not generally concerned with exact weight. Drug dealers often conceal drugs in the glove box or center console of a vehicle and will have a way to package the drug when sold to individual users. Aluminum foil is one way to package drugs. A dealer does not usually possess paraphernalia used for consuming drugs. There are different levels of methamphetamine dealers, and low-level or

"street level" dealers tend to buy about one ounce at a time, sell in grams, and be more mobile. Tr. V. I at 169. Some low-level dealers may not have a large amount of money if they have about an ounce of drugs because they have not yet sold much of the drug.

[8] Officer Cooper also testified that methamphetamine users typically purchase and immediately use only one dose at a time and keep paraphernalia, such as a pipe or needle, with them to consume the drug. It is not common for users of methamphetamine to have a large quantity of the drug with them because users generally do not have money to purchase a large amount. Methamphetamine users tend to be very active because the drug is a stimulant, and they may have missing or discolored teeth and gum disease. Methamphetamine users also tend to be very skinny and frail in stature, have open skin wounds, and often itch at their skin. Drug users tend to prefer either methamphetamine or heroin; it is uncommon to use both.

[9] After the presentation of evidence, the State requested that the trial court give a jury instruction that stated additional evidence, other than weight of the drug, is necessary in order to convict the defendant of dealing in methamphetamine. Bline objected on the grounds that the instruction was "not an element of defense," "elevat[ed] one fact over the other," and was not relevant. Tr. V. I at 200-01, 208-09. The trial court gave the instruction over Bline's objection. The sixteen preliminary instructions were reiterated in writing, and the jury was instructed to continue considering them during its deliberations.

Twenty final instructions were given which included, in relevant part, the following:

> Number 5, … To convict the Defendant, the State must have proven each of the following elements beyond a reasonable doubt: On or about March 28th, 2019, the Defendant, Devon Bline knowingly or intentionally possessed with the intent to deliver methamphetamine pure or adulterated, said methamphetamine weighing—having a weight of at least 10 grams. If the State fails to prove each of these elements beyond a reasonable doubt, you must find the Defendant, Devon Bline, not guilty of dealing in methamphetamine.

> * * *

> Number 9, if the amount of methamphetamine is less than 28 grams, the person may be convicted only if there's evidence in addition to the weight of the drug that the person intended to deliver the methamphetamine.

> Number 10, under the laws of this State a person charged with a crime is presumed to be innocent. This presumption of innocence continues in favor of the Defendant throughout each stage of the trial. You should fit the evidence presented to the presumption of the Defendant is innocent if you can reasonably do so. If the evidence lends itself to reasonable interpretations, you must choose the interpretation consistent with the Defendant's innocence….

> * * *

> Number 15, your verdict should be based on the law, and the facts as you find them….

* * *

> Number 17,… In considering any one instruction, you should construe it in connection with, and in the light of every other instruction given….

*Id*. at 213-16; App. at 102, 106-07, 112, 114.

[11] The jury found Bline guilty of dealing in methamphetamine, as a Level 2 felony, among other convictions. The trial court entered judgments of conviction accordingly. The court held a sentencing hearing on December 4, 2019, and sentenced Bline to an aggregate term of thirty years in the Department of Correction. This appeal ensued.

# Discussion and Decision

[12] The only issue Bline raises on appeal is whether the trial court erred in giving the jury instruction number nine, i.e., "if the amount of methamphetamine is less than 28 grams, the person may be convicted only if there is evidence in addition to the weight of the drug that the person intended to deliver the methamphetamine." Tr. at 213; App. at 106. He contends that instruction "misled" the jury because it removed "an element from consideration by the jury," was irrelevant, and "improperly emphasized certain facts," i.e., that twenty-eight grams is the cut-off to strict liability. Appellant's Br. at 9.

[13] We review a trial court's decision to tender or reject a jury instruction for an abuse of discretion.

Under this standard, we look to whether evidence presented at trial supports the instruction and to whether its substance is covered by other instructions. [*Kane v. State*, 976 N.E.2d 1228, 1230-31 (Ind. 2012).] When the appellant challenges the instruction as an incorrect statement of law, we apply a de novo standard of review. *Id.* at 1231. We reverse the trial court only if the instruction resulted in prejudice to the defendant's "substantial rights." *Hernandez v. State*, 45 N.E.3d 373, 376 (Ind. 2015).

*Batchelor v. State*, 119 N.E.3d 550, 554 (Ind. 2019). In reviewing a trial court's decision to give or refuse tendered jury instructions, we consider: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which are given. *Guyton v. State*, 771 N.E.2d 1141, 1144 (Ind. 2002). "Absent evidence to the contrary, we generally presume the jury follows the trial court's instructions in reaching its determination." *Gibson v. State*, 43 N.E.3d 231, 241 n.5 (Ind. 2015).

[14] Jury instruction number 9 is a correct statement of the law, in summary form. Indiana Code Section 35-48-4-1.1 states, in relevant part:

(a) A person who:

\* \* \*

(2) possesses, with intent to:

(A) deliver … methamphetamine, pure or adulterated;

commits dealing in methamphetamine…

(b) A person may be convicted of an offense under subsection (a)(2) only if:

(1) there is evidence in addition to the weight of the drug that the person intended to deliver … the drug; or

(2) the amount of the drug involved is at least twenty-eight (28) grams.

\* \* \*

(e) The offense is a Level 2 felony if:

(1) the amount of the drug involved is at least ten (10) grams …

[15] Moreover, there was evidence in the record to support giving instruction number nine. Officer Hiser testified that he found the methamphetamine, scales, and aluminum foil in Bline's vehicle, and Bline was the sole occupant of that vehicle. State's Exhibit 32, admitted by stipulation, is a laboratory report stating that the methamphetamine found in Bline's car weighed 27.09 grams. And Officer Cooper testified that, based on his specialized training and experience related to drug trends, the circumstances surrounding the discovery of the methamphetamine in Bline's car were indicative of dealing—rather than just using—the drug.

[16] While the reference to twenty-eight grams may have been irrelevant since the amount here was below twenty-eight grams, and the relevant portions of instruction number 9 may have been covered by other instructions, such as instruction number 5, Bline has failed show any harm from the inclusion of jury instruction number 9. His contention that the instruction "misled" the jury by emphasizing the weight of twenty-eight grams is incorrect; the instruction emphasized weight *less than* twenty-eight grams. Nor did instruction 9 remove any element of the offense, as Bline asserts; rather, the instruction specifically stated that the State must prove possession with intent to deliver *in addition* to the weight of the drug.

[17] Bline has offered no evidence to rebut our assumption that the jury followed the trial court's instructions in reaching its decision. *Gibson*, 43 N.E.3d at 241 n.5. And we discern no prejudice to Bline's "substantial rights" from the inclusion of instruction number 9.[2] *Batchelor*, 119 N.E.3d at 554; *see also* Ind. Trial Rule 61. Rather, if the instruction had any effect on the jury, it would have been to Bline's advantage as the instruction specifically provided that he could only be convicted if there was evidence of intent to deliver "*in addition* to the weight" where the drug weighs less than twenty-eight grams. App. at 106 (emphasis

---

[2] Bline cites no authority for his contention that, "[i]n cases less than 28 grams, th[e] juxtaposition between 10 and 28 grams creates an evidentiary spectrum requiring the State to produce less and less evidence the closer the weight comes to 28 grams." Appellant's Br. at 14. Therefore, he waives that argument. Ind. App. R. 46(A). Waiver notwithstanding, we note that his contention conflicts with the plain language of Indiana Code Section 35-48-4-1.1(b).

added).  Thus, even if the trial court erred in giving instruction 9, we will not reverse its decision because the error was harmless.

[18]     Affirmed.

Vaidik, J., and Baker, S.J., concur.